220 N.J. Super. 38 (1987)
531 A.2d 381
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT EARL TOWNES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 3, 1987.
Decided September 16, 1987.
*39 Before Judges ANTELL, LONG and D'ANNUNZIO.
Alfred A. Slocum, Public Defender, attorney for appellant (Roxanne J. Gregory, Assistant Deputy Public Defender, of counsel and on the brief).
Herbert H. Tate, Jr., Essex County Prosecutor, attorney for respondent (Janet Berberian, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
This appeal involves application of the principles announced in State v. Gilmore, 103 N.J. 508 (1986). Gilmore held that the *40 New Jersey Constitution forbids "a prosecutor to exercise peremptory challenges to remove potential petit jurors who are members of a cognizable group on the basis of their presumed group bias...." Id. at 517.
Essex County indictment 2420-80 charged defendant, a black man, with aggravated assaults of Gerard Frisoli and Thomas Hill (N.J.S.A. 2C:12-1 b(5)(a)) and with resisting arrest (N.J.S.A. 2C:29-2). Frisoli and Hill are white[1] Newark police officers. Defendant denied his guilt and contended that he had been the victim of police brutality. At his first trial, defendant was found not guilty of assaulting Frisoli, but the jury was unable to reach a verdict on the two other charges. At his second trial, in September-October 1984, defendant was found not guilty of assaulting Hill, but he was found guilty of resisting arrest. Defendant, age 37, had no prior record. He was placed on probation for one year and fined $250.
At the conclusion of jury selection, but before the petit jurors were sworn, defense counsel moved for a mistrial on the ground that the assistant prosecutor (hereafter, prosecutor) had exercised his peremptory challenges to exclude blacks. The motion was denied. When he decided this motion, the trial judge did not have the benefit of the Appellate Division's second[2]Gilmore decision, which was decided in March 1985, or of the Supreme Court opinion. State v. Gilmore, 199 N.J. Super. 389 (App.Div. 1985), affirmed, 103 N.J. 508 (1986).
*41 Gilmore (hereafter, references to Gilmore are to the Supreme Court's opinion unless indicated otherwise) ruled that the defendant has the burden of persuading the trial court, by a preponderance of the evidence, that the State impermissibly exercised preremptory challenges to exclude members of a cognizable group. However, the prosecution has the intermediate burden of justifying its challenges if the defendant has established a prima facie showing that the State's exercise of peremptory challenges was constitutionally flawed. To establish a prima facie case, the defendant must demonstrate "that the potential jurors wholly or disproportionally excluded were members of a cognizable group" and "that there is a substantial likelihood that the peremptory challenges ... were based on assumptions about group bias rather than any indication of situation-specific bias." Gilmore at 535-536.
In the present case, defendant made a prima facie showing that the State had exercised its peremptory challenges to exclude blacks. Under the version of R. 1:8-3(d) in effect in 1984, the State had 10 peremptory challenges. The prosecutor exercised nine peremptory challenges to exclude all but two of the blacks who were empaneled. Thus, the prosecutor utilized 90% of his challenges to exclude blacks. Through the exercise of his peremptory challenges, the prosecutor excluded 81% (9 of 11) of the blacks placed in the jury box. The fact that two blacks served as jurors gives no comfort to the State because the prosecutor had exhausted his peremptory challenges. The State's other challenge was exercised to exclude a white woman. The prosecutor candidly, perhaps ingenuously, admitted that he excluded the white woman because of her sex. The prosecutor told the trial judge that he did not want a female foreperson. Therefore, the only challenge not utilized to exclude a black was exercised to exclude a member of another cognizable group, a female. Thus, as in Gilmore,[3] the prosecution, *42 through the exclusion of a woman, clearly demonstrated a tendency to exclude jurors on the basis of presumed group bias.
We are satisfied that these facts establish the disproportionate exclusion by the State of blacks under circumstances which establish a substantial likelihood that the State's exercise of its peremptory challenges was based on the prosecution's concerns about group bias rather than on indicators of situation-specific bias.[4]Gilmore, 103 N.J. at 535-536.
The prosecutor's explanations indicate that challenges to four of the nine blacks could be justified on situation-specific grounds. One had been previously charged with a crime. Two had children who had been involved in the criminal justice system. However, the prosecutor's failure to exclude a white person whose son had been convicted of a drug offense and placed on probation for two years casts a doubt on the bona fides of this justification. The fourth black juror whose exclusion was clearly justified was described by the trial judge as "strange".
The prosecutor attempted to justify exclusion of the five remaining black jurors. He excused two of them because they were employed by the city of Newark. On its face this reason makes no sense because the victims of the alleged crime were also Newark employees. A third juror was excused because she had served as a juror in a murder trial ten years earlier and the prosecutor expressed concern that she would find that the injuries sustained by the victims in this case were inconsequential. *43 But a white juror who had served as a juror in an assault with a deadly weapon prosecution was not excused. A fourth juror was excused because she was a social worker and the fifth juror was excused because she allegedly worked at a blood bank. The prosecutor expressed his concern that because of her employment she would be more favorable to defendant because the defendant's clothes were blood stained.
To rebut defendant's prima facie case, the prosecutor's reasons for exercising peremptory challenges need not be sufficient to justify a challenge for cause. Gilmore at 538. Nor does Gilmore seek to eliminate or severely proscribe the "hunch" challenge. Id. at 539. Under Gilmore, the trial court is charged with the difficult task of deciding whether the reasons articulated by the prosecution are genuine and reasonable grounds for constitutionally permissible challenges or whether they are "sham excuses belatedly contrived to avoid admitting acts of group discrimination." Id. at 538 (quoting People v. Wheeler, 22 Cal.3d 258 at 282, 148 Cal. Rptr. 890 at 906, 583 P.2d 748 at 765 (1978)).
As we stated earlier, the trial judge in the present case was at a disadvantage because he did not have the benefit of the Appellate Division's second Gilmore opinion and the Supreme Court opinion. In ruling on defendant's motion for a mistrial, the trial judge expressed his general conclusion that the prosecutor's challenges were "in no way created or caused, or jurors excused because of race." Although the judge made specific reference to the four justifiable challenges, he made no specific evaluation of the five challenges which we have identified as problematic. Regarding the State's challenge of the white female foreperson, the judge stated that he could "easily see why the Prosecutor would like a man as a foreperson of the jury." In short, because this trial occurred before Gilmore, the judge's analysis was not equal to the task. We have considered a remand for necessary findings under Gilmore standards, but we have rejected that alternative. Three years have passed and it is highly unlikely that the trial judge can rely on anything *44 more than the written record. Therefore, we shall apply Gilmore's principles to the record on appeal.
We "must judge the defendant's prima facie case against the prosecution's rebuttal to determine whether the defendant has carried the ultimate burden of proving, by a preponderance of the evidence, that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds of presumed group bias." Gilmore, 103 N.J. at 539.
As previously described, defendant presented a strong prima facie case that the prosecution excluded blacks for reasons of presumed group bias. The State enhanced defendant's case when it utilized one challenge to exclude a female white juror because of her sex. The State's admission that it excluded a white woman solely because of her sex is significant in two respects. It establishes a tendency to exclude cognizable groups, which lends support to the inference that the nine excluded black jurors were excluded because they were members of a cognizable group consisting of black people. It also suggests that the prosecutor was accomplishing a subsidiary goal through the exclusion of the nine blacks because eight of the nine blacks excluded were women. Thus, the prosecutor exercised nine challenges to exclude blacks and nine challenges to exclude women. The exclusions of women manifested the prosecutor's admitted preference for male jurors. Under Gilmore, a "defendant need not be a member of the excluded group in order to complain of a violation of the representative cross-section rule...." Id. at 536 (quoting Wheeler, 22 Cal.3d at 281, 148 Cal. Rptr. at 905, 583 P.2d at 764).
Against defendant's compelling prima facie case, the State offered feeble rationalizations of its exercise of the five problematic challenges. These rationalizations are stripped of whatever minimal credibility they may have had when they are considered in the context of this case, a confrontation between a black civilian and white policemen.
Defendant was not charged with any crimes other than those arising from the confrontation with the police. Defendant *45 denied his guilt and alleged that he was the victim of police brutality. Thus, this case implicates the long existing tension between black civilians and white police personnel. This tension was identified as one of the underlying causes of the 1967 Newark riot and continues to be a factor in urban society. Report for Action, Governor's Select Commission On Civil Disorder, State of New Jersey, February, 1968;[5]U.S. Department of Justice Community Relations Service, 1984 Annual Report 4. It strains credulity to believe that the prosecutor was exercising his challenges unaffected by the influence of this tension.
Moreover, because of this tension, application of Gilmore in this case unquestionably advances the principles upon which Gilmore is based. The basic principle underlying Gilmore is that the New Jersey constitution guarantees a defendant a trial "by a jury drawn from a representative cross-section of the community." Id. at 524. Proportional representation of every cognizable group on every jury is not guaranteed. Only the opportunity of a representative cross-section is guaranteed. The premise of Gilmore is that members of cognizable groups probably carry with them "opinions, preconceptions, or even deep-rooted biases derived from their life experiences in such groups ..." Id. at 525 (quoting Wheeler, 22 Cal.3d at 266, 148 Cal. Rptr. at 896, 583 P.2d at 761.). The rationale of the representative cross-section rule is "to achieve an overall impartiality by allowing the interaction of diverse beliefs and values the jurors bring from their group experiences." Ibid.
The prosecutor's exclusion of blacks interdicted the mix of group experience thereby obstructing the goal of impartiality. The effect of group exclusion of blacks is egregious in a prosecution based solely on a confrontation between a black *46 civilian and white police personnel. The prosecutor used his challenges to suppress the contribution of the black experience to the jury's deliberative process.[6] In doing so, he reproduced in the courtroom the black-white authority conflict of the urban street. See generally Report of N.J. Supreme Court Committee On Minority Concerns, 1984 (exclusion of minorities from the administration of justice is a major minority concern).
Reversed and remanded for a new trial on the charge of resisting arrest.[7]
NOTES
[1] No evidence was introduced at trial to establish the victims' race. During colloquy on the Gilmore issue, defendant's trial counsel stated that Frisoli and Hill are white. Neither the trial judge nor the assistant prosecutor corrected defense counsel. Appellant's brief states that the victims are white. The State's brief does not challenge this assertion.
[2] The first Gilmore opinion of the Appellate Division was limited in effect. It recognized the tension between the use of peremptory challenges to exclude cognizable groups and constitutional guarantees of trial by an impartial jury, and remanded the case to the trial court for fact finding. State v. Gilmore, 195 N.J. Super. 163 (1984).
[3] In Gilmore the Court stated:

"First, the assistant prosecutor's articulation of the third criterion  that he wanted jurors who were `without maternal family instincts'  is an admission of presumed group bias in excluding women, a cognizable group for purposes of impartial jury analysis." Id. at 541.
[4] State v. Hughes, 215 N.J. Super. 295 (App.Div. 1986), in which we ruled that a prima facie showing had not been made, is distinguishable. In that case the exclusion of two blacks, in the circumstances of that case, was not sufficient to rebut the presumption that the State exercised its peremptory challenge on constitutionally permissible grounds.
[5] According to the Report, the sparks which ignited the 1967 Newark riot were the arrest of black cab driver John W. Smith on July 12, 1967 and allegations and rumors that Smith was the victim of police brutality. The Smith incident was preceded by a fight between blacks and the East Orange and Newark police on July 8. Report for Action, p. 104.
[6] A study prepared for the Governor's Select Commission On Civil Disorder revealed the substantial difference in attitude between blacks and whites regarding police brutality. According to this study, 49% of Newark blacks considered the police to be brutal but only 5% of Newark whites and 1% of whites residing outside Newark shared the blacks' concern. Blacks considered police brutality to be an underlying cause of the 1967 riot. Whites attributed little significance to brutality as a factor in the riot. Negro And White Attitudes Toward Problem and Progress In Race Relations, Opinion Research Corporation, Princeton, New Jersey, January 1968, p. 27, p. 37.
[7] Defendant's Gilmore argument is based on his contention that the State improperly utilized its peremptory challenges to exclude blacks. We intimate no view on the question of whether the prosecutor's exclusion of women also requires reversal of defendant's conviction.