259 N.J. Super. 235 (1992)
611 A.2d 1169
STATE OF NEW JERSEY, PLAINTIFF,
v.
JUAN ZAVALA AND BARTOLO ZAVALA, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided August 12, 1992.
*237 Gina Galanti, Assistant Hudson County Prosecutor, for the State of New Jersey, for the State.
John Elefthrow and Judith Fallon, Assistant Deputy Public Defenders, for defendants.
GROSSI, J.S.C.
This opinion amplifies an oral decision. The matter came before this court on defendant's motion for a mistrial based on an assertion that the prosecution had impermissibly exercised peremptory challenges to remove potential jurors on the basis of race. The issue before the court is whether the use of a disproportionate number of challenges to exclude minorities from the petit jury coupled with the State's admission that it had excluded six of eight jurors on the basis of a bias against young persons establishes by a preponderance of the evidence that the prosecution exercised its peremptory challenges on constitutionally impermissible grounds of group bias in violation of State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986).
Hudson County Indictment Number XXXX-XX-XX charged defendants Juan Zavala and Bartolo Zavala with Attempted Murder in violation of N.J.S.A. 2C:5-1 and 2C:11-3; Aggravated Assault in violation of N.J.S.A. 2C:12-1b(1), (2) and (3); Unlawful Possession of a Weapon in violation of N.J.S.A. 2C:39-5(d); Possession of a Weapon for Unlawful Purpose in violation of N.J.S.A. 2C:39-4(d) and Tampering with a Witness in violation of N.J.S.A. 2C:28-5(a) (Juan Zavala only). Both Juan and Bartolo Zavala are nationals of El Salvador.
Consistent with R. 1:8-3(a) the court conducted a voir dire examination of the prospective jurors. The State was entitled to twelve peremptory challenges and the defendants to ten each. R. 1:8-3(d). During the selection process, but prior to the Gilmore motion, the prosecution exercised eight challenges to exclude five black and/or hispanic persons. Thus, of the eight challenges exercised, the prosecution utilized 62.5% to *238 exclude minorities from the petit jury. Additionally, of the eight challenges exercised, six of these or 75%, were used to exclude young persons between the ages of eighteen to thirty. Five of these persons were either black or hispanic. Following the prosecution's eighth challenge, defense counsel moved for a mistrial asserting that the prosecution had exercised peremptory challenges solely on the basis of race.
In State v. Gilmore, supra, the New Jersey Supreme Court held that a criminal defendant may challenge the State's use of peremptory challenges if such challenges were constitutionally flawed. This holding has recently been extended to allow the State to challenge the defendant's use of peremptory challenges as well as to the use of challenges by civil litigants. See Georgia v. McCollum, ___ U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); State v. Alvarado, 221 N.J. Super. 324, 534 A.2d 440 (App.Div. 1987); Edmonson v. Leesville Concrete Co., 500 U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).
In Gilmore, the Court established a three step process for the trial court's determination. First, the defendant must make out a prima facie showing of purposeful discrimination by demonstrating that the potential jurors wholly or disproportionately excluded were members of a cognizable group and that there is a substantial likelihood that the peremptory challenges resulting in the exclusion were based on assumptions about group bias rather than situation-specific bias. Gilmore, supra, 103 N.J. at 535-536, 511 A.2d 1150. Second, upon the defendant's prima facie showing, the burden shifts to the prosecution to come forward with evidence that the peremptory challenges under review are justifiable on the basis of prosecutorial concern about situation-specific bias. Id. at 537, 511 A.2d 1150. Finally, the trial court must weigh all of the circumstances and determine whether the defendant established purposeful discrimination. Ibid.
Here, the defendants established a prima facie showing that the potential jurors excluded were members of a cognizable *239 group. The facts indicate that five of the eight jurors challenged were black or hispanic. Both black and hispanic persons have been determined to be cognizable groups for purposes of a Gilmore motion. See, State v. Gilmore, supra; State v. Townes, 220 N.J. Super. 38, 531 A.2d 381 (App.Div. 1987). Once the court is satisfied that the excluded jurors were members of a cognizable group, the defendant must also show that there is a "substantial likelihood" that the peremptory challenges exercised were based on assumptions about group bias rather than situation-specific bias. Although the Court in Gilmore left the term "substantial likelihood" undefined, the decision instructs the trial courts to consider "all of the relevant circumstances" including such factors as:
(1) that the prosecutor struck most or all of the members of the identified group from the venire; (2) that the prosecutor used a disproportionate number of his or her peremptories against the group; (3) that the prosecutor failed to ask or propose questions to the challenged jurors; (4) that other than their race, the challenged jurors are as heterogeneous as the community as a whole; and (5) that the challenged jurors, unlike the victims, are the same race as defendant.

[Gilmore, supra, 103 N.J. at 536, 511 A.2d 1150]
Here, the prosecution exercised five of eight or 62.5% of its challenges to exclude prospective jurors who were either black or hispanic. The fact that two black jurors remained on the jury is of no moment since the prosecution had not yet exhausted all peremptory challenges. In this regard, the prosecution's conduct is similar to that of the prosecution in State v. Townes, supra. In that case, the Appellate Division reversed defendant's conviction and remanded the matter for a new trial because the prosecutor had exercised nine of ten peremptory challenges or 90% to exclude black persons. Inclusion of two black persons on the jury gave the state "no comfort" because the prosecutor had exhausted his peremptory challenges before the two black jurors were seated.
In this matter, the prosecution also admitted that it had challenged several persons because of age. The prosecution *240 stated that it did not want "young people" to sit as jurors because they would be unable to draw from important "life experiences" and would simply "not make good jurors for the state." Thus, the prosecution, through the admitted exclusion of jurors based on age alone, demonstrated a tendency to exclude jurors on the basis of presumed group bias and as such, enabled the defendants to meet their prima facie burden. See State v. Townes, supra, 220 N.J. Super. at 44, 531 A.2d 381.
In order to rebut a defendant's prima facie case, the prosecution's reasons for exercising peremptory challenges need not be sufficient to justify a challenge for cause. Gilmore, supra, 103 N.J. at 538, 511 A.2d 1150. Although Gilmore did not eliminate the traditional "hunch" challenge, it did require prosecutors to exercise peremptory challenges on grounds that are reasonably relevant to the particular kind of case on trial or its parties or witnesses. Id. Here, the prosecution's explanations indicate that only one of the total number of challenges exercised could be justified on situation-specific grounds. A middleaged hispanic male had been observed by the prosecution demonstrating a physical inability to see or hear the voir dire of the prospective jurors. The prosecution indicated that it observed the man "squinting" and "leaning forward in his chair" and thus challenged him based on a perceived inability to see and hear the testimony at trial.
The prosecution attempted to justify exclusion of the seven other challenged jurors by repeatedly indicating that it had challenged each juror on the basis of their age and perceived maturity level. When questioned by the court as to each specific challenge, the prosecution indicated that each juror challenged was "too young and immature", "appeared to be immature" or was simply "too young." The prosecution did not indicate to the court any normally accepted situation-specific grounds for excusing jurors such as past involvement with the law or law enforcement, employment status, physical impairments, or a lack of courtroom attentiveness. Rather, the prosecutor candidly volunteered to the court that it was dissatisfied *241 with the jury panel and did not want "young people" to serve on the jury.
The State's admission that it excluded six potential jurors on the basis of age alone is significant because it demonstrates an admitted group bias against young persons and lends support to the inference that the five challenged black and hispanic jurors were excluded because they were members of a cognizable group. State v. Townes, supra 220 N.J. Super. at 44, 531 A.2d 381. The New Jersey Constitution guarantees a defendant a trial "by a jury drawn from a representative cross-section of the community." Id. at 45, 531 A.2d 381 citing State v. Gilmore, supra, 103 N.J. at 524, 511 A.2d 1150. Indeed, no one may be disqualified from service as a grand or petit juror in this State because of race, color, creed, national origin, ancestry, marital status or sex. N.J.S.A. 2A:72-7. It is the rule in both the state and federal courts that although age, economic status and occupation are not cognizable groups per se, Powers v. Ohio, 499 U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); State v. Gilmore, supra, 103 N.J. at 527, 511 A.2d 1150, jury selection based on group bias is constitutionally impermissible because it offends the constitutional guarantee of a fair and impartial trial. Georgia v. McCollum, supra, ___ U.S. at ___, 112 S.Ct. at 2354; State v. Alvarado, supra, 221 N.J. Super. at 328, 534 A.2d 440. The injury generated by discriminatory jury selection is not limited to the defendant alone but creates an injury to the jury system, to the law as an institution, to the community at large and to the democratic ideal reflected in the process of our courts. Ballard v. U.S., 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181 (1946). As the United States Supreme Court wrote in Batson v. Kentucky, 476 U.S. 79, 87, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69, 81 (1986): "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community."
*242 In the matter before this court, the prosecution exercised a disproportionate number of its challenges to exclude minorities from the petit jury. In the exercise of all challenges but one, the prosecution failed to offer any situation-specific reason for the challenge exercised. The prosecution admitted a group bias against young persons. Although young persons do not constitute a cognizable group, the prosecution's admitted exclusion of all young persons from the jury constitutes an exclusionary tactic based on group bias. When coupled with the prosecutions use of a disproportionate number of challenges to exclude minorities, this conduct establishes by a preponderance of the evidence that the prosecution exercised its peremptory challenges on constitutionally impermissible grounds of group bias. If a court allows jurors to be excluded because of group bias, it becomes a willing participant in a scheme that could only undermine the very foundation of our system of justice  our citizens' confidence in it. State v. Alvarado, supra, 221 N.J. Super. at 328, 534 A.2d 440; Georgia v. McCollum, supra, ___ U.S. at ___, 112 S.Ct. at ___. To decide otherwise would be to frustrate the principles enunciated in Gilmore and its progeny. The defendant's motion for a mistrial is hereby granted.