280 N.J. Super. 445 (1995)
655 A.2d 948
JESSE E. RUSSELL, AS ADMINISTRATOR AD PROSEQUENDUM FOR THE HEIR-AT-LAW OF CHERYL W. RUSSELL, DECEASED, AS GENERAL ADMINISTRATOR OF THE ESTATE OF CHERYL W. RUSSELL, AND INDIVIDUALLY; WILLIAM E. RUSSELL, AN INFANT BY HIS GUARDIAN AD LITEM, ROSHA MCGILL, PLAINTIFFS-APPELLANTS,
v.
RUTGERS COMMUNITY HEALTH PLAN, INC.; JAMES M. LUCIANO, M.D.; CENTRAL NEW JERSEY MEDICAL GROUP; AND JULIA LADD SMITH, M.D., DEFENDANTS-RESPONDENTS, AND S. AIELLI; MARY ANN MULLEN, A/K/A MARY ANN MUELLER; MARY ROE, NAME BEING FICTITIOUS; AND RICHARD ROE, NAME BEING FICTITIOUS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1995.
Decided March 29, 1995.
*446 Before Judges SHEBELL, WALLACE and KLEINER.
*447 Rowand H. Clark, argued the cause for appellants (Mr. Clark, on the brief).
Barbara Ann Jacob, argued the cause for respondents, Rutgers Community Health Plan, Inc., Central New Jersey Medical Group, and James M. Luciano, M.D. (Grossman & Kruttschnitt, attorneys; Ms. Jacob, of counsel; Anthony M. Tracy, on the brief).
William Salmond, argued the cause for respondent, Julia Ladd Smith, M.D. (Karcher, Salmond, Ronan & Rainone, attorneys; Rebecca Smith Mulligan, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiffs appeal from a jury verdict of no cause of action in favor of defendants in this medical malpractice action in which survival and wrongful death damages were sought. Plaintiffs, African-Americans, urge that defense counsel improperly used race as a criterion for removing the only African-American prospective juror from the panel; that the trial judge erred in denying the request of plaintiffs' counsel for additional peremptory challenges, and that the judge erroneously excluded testimony by the decedent's mother regarding statements made by decedent's sister. We affirm.
Decedent, Cheryl Russell, became ill on Wednesday morning, March 12, 1986. When she did not feel better by the next morning, her husband, Jesse, asked her parents to come take care of her so that he could go to work. When Mr. Russell got home that evening, Cheryl told him that she had made an appointment to be seen the following day by a doctor at Rutgers Community Health Plan (RCHP).
Defendant, Dr. James P. Luciano, M.D., saw Cheryl at 2:30 p.m. on Friday, March 14, 1986, at RCHP. She complained of shakiness, the chills, a fever, dizziness, fatigue, and muscle aches, but she did not have a sore throat, ear pain, vomiting, diarrhea, nasal congestion, or cough sputum. Upon examining Cheryl, Dr. Luciano *448 found that her lungs were clear, that she was not in respiratory distress, and that there was no indication of mucus, congestion, or wheezing. It was Dr. Luciano's opinion that Cheryl had the flu. He told her to drink lots of fluids, to rest for a few days, to take aspirin for the aches, and to call if she did not improve, if she got worse, or if she developed new symptoms.
According to Mr. Russell, his wife's condition did not improve over the weekend. On Saturday and Sunday, she remained tired, feverish, and weak and just laid in bed. By the time he left for work on Monday, she was barely able to talk. Decedent's mother testified that Cheryl's breathing was shallow and her voice was barely audible. She called RCHP some time that morning and although she told the nurse that her daughter was too sick to do so, she was told that Cheryl had to come in to be seen by a doctor.
According to defendant Julia Ladd Smith, M.D., she had received information from the nurse regarding Cheryl's call, but Dr. Smith did not speak to the patient or her mother. Dr. Smith, through her nurse, advised Cheryl to increase her fluids and bed rest and to take aspirin for the aches. She prescribed medication for the dizziness and recommended that the patient make an appointment if her temperature persisted. A nurse spoke to Cheryl or her mother later that morning and made a note that the patient was short of breath.
Later that day, decedent's mother spoke to Cheryl's sister by telephone and discussed Cheryl's condition. Based on that conversation, the mother called the emergency squad. Cheryl was taken to the hospital emergency room and later admitted. Unfortunately, she went into cardiac arrest, and two days later, she died. Her cause of death was respiratory failure and sepsis from a streptococcus pneumonia organism that was in her bloodstream and her lungs, which had developed on top of her previous influenza. The pneumonia was irreversible by the time she had arrived at the hospital.
Plaintiffs' expert opined that Dr. Luciano had deviated from accepted standards of medical care when, on Friday, March 14, he *449 failed to give Cheryl more detailed and specific instructions regarding the potential complications of flu and what she should do if these complications developed. Dr. Smith, he opined, had deviated by not personally examining Cheryl on Monday, March 17, and by not doing more than telling a very sick patient that she needed to make an appointment.
The jury returned a verdict finding that neither doctor had deviated from accepted standards of medical care in their treatment. Plaintiff's motion for a new trial was denied.
On appeal, plaintiffs contend that the trial judge erroneously denied their motion for a mistrial when defense counsel for Dr. Luciano used a peremptory challenge to remove the only African-American on the jury panel. Defendants respond that plaintiffs failed to make a prima facie showing of an improper reason for the challenge, and that, in any event, defense counsel for Dr. Luciano articulated valid and non-race based reasons for striking this juror.
During jury selection, only one African-American person was in the panel of twenty-nine potential jurors. After several jurors were excused for cause and after several rounds of peremptory challenges, this juror was called into the box. He stated that he was forty-nine years old, divorced, and had four children, ages twenty-six, twenty-seven, twenty-eight and twenty-nine. He worked at Sunshine Biscuit, in the sugar wafer department as a relief person for five different machines. When asked what his former wife did for a living, he responded, "Hercules. Hercules, up in Sayreville."
Defense counsel for Dr. Smith, whose turn it was to exercise a peremptory challenge, declared the jury acceptable. Plaintiffs' counsel then excused a male juror and, after a female juror was substituted, counsel for Dr. Luciano asked to excuse the African-American juror. Plaintiffs' counsel immediately requested a side-bar conference and noted that the defense had exercised a challenge to the only African-American on the panel. He "submit[ted] *450 that the defendant should make a showing of a non-racial reason for excluding the juror."
Counsel for Dr. Luciano responded:
Your Honor, I have different comments. Why is  perhaps Mr. Clark should make a showing of why he excluded all the males on the jury before I'm required to do that, all the white males. Second of all, I'm not aware of any case law that provides this requirement to civil cases. And third of all, I mean, I have three peremptory challenges left and they are without  for no cause. I don't have to provide a cause.
THE COURT: Well, I'd like you to verbalize your reason for excusing that juror.
[COUNSEL]: I'm excusing that juror because, one, because of his educational background. This is a medical case.
* * * * * * * *
[COUNSEL]: He has four children in the age range of this woman who died. I think he'd be initially sympathetic because he has four children in this age range.
* * * * * * * *
[COUNSEL]: Your Honor, my responses are twofold: I have excluded four jurors total, out of a panel of I don't know how many. I have excluded jurors of all different nationalities for varying reasons. And because I excluded this juror for which I have two reasons to excuse him. He is divorced. The plaintiff has been divorced. He has four kids close in age range to the woman who died. He is least educated, he is the least articulate. I have a basis for his exclusion, and I don't feel that I have to make a showing for caused [sic] based on the case law.
THE COURT: I'm going to deny the application for a mistrial. But let me make it clear that I agree with the plaintiff that in civil cases an attorney is not to exercise a peremptory challenge which is founded solely on racial grounds. That in my view is the law in a civil case as well as a criminal trial. But I'm ruling in favor of Miss Jacob because she did articulate some reasons for her exercising her peremptory challenge which were not  which had nothing to do with the race of the prospective juror.
Counsel for Dr. Smith pointed out that he had also considered excusing the juror for the same reasons, that is, because he sounded unintelligent and because this was a complex case. However, he refrained because he and counsel for Dr. Luciano had been forewarned by plaintiffs' counsel that challenging of any minority person would make it encumbent upon the defendant to offer non-biased reasons for the exclusion.
The judge denied the motion. He found that defendant had articulated reasons for challenging the juror which had nothing to *451 do with race. Plaintiffs' new trial motion was based in part on the above denial. In ruling on the motion, the judge again noted that the reasons stated by defense counsel, even in retrospect, appeared legitimate. He found that the reasons were clear and articulate and did not appear to be a pretext or sham.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)), the United States Supreme Court held that the equal protection clause bars the State from challenging jurors solely on account of their race or on the assumption that African-American jurors as a group would be unable to impartially consider the State's case. 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 83. The court held that a party claiming an improper challenge must first make out a prima facie showing of purposeful discrimination. This can be done by showing disproportionate impact or by showing that the totality of relevant circumstances gives rise to an inference of discriminatory purpose. 476 U.S. at 93-94, 106 S.Ct. at 1721-22, 90 L.Ed.2d at 85-86. For example, a party might show a pattern of challenges used against African-American jurors, or that the opposing attorney's questions and statements during voir dire compel the inference that discrimination was intended. 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.
The burden then shifts to the party exercising the challenge to come forward with some neutral explanation. Although the explanation need not rise to the level of a for-cause challenge, the party must be able to articulate a reason which is unrelated to race and which is related to the case being tried. 476 U.S. at 97-98, 106 S.Ct. at 1723-24, 90 L.Ed.2d at 88.
The New Jersey Supreme Court in State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986) chose to rest its decision barring challenges based on bias on State constitutional protections of freedom from discrimination, right to a jury trial, and the right to an impartial jury drawn from a representative cross-section of the community. N.J. Const. art. I, ¶¶ 5, 9, and 10. State v. Gilmore, supra, 103 N.J. at 523-24, 511 A.2d 1150. The Court first noted that there is a rebuttable presumption that the State exercised its *452 challenges on permissible grounds. That presumption may be rebutted, however, by showing that the potential jurors who were wholly or disproportionately excluded were members of a cognizable group, id. at 535, 511 A.2d 1150,[1] and that there is a "substantial likelihood" that the peremptory challenges which resulted in the exclusions were based on assumptions of group bias rather than any indication of situation-specific bias. Id. at 536, 511 A.2d 1150.
Under the holding in Gilmore, supra, in deciding whether a party has met this prima facie showing, a trial court should consider all relevant circumstances, including, but not limited to the number of members of the group that were excused, whether the opposing party used a disproportionate number of peremptory challenges against the minority group, whether the excluded jurors were except for their race otherwise heterogeneous, whether the opposing party failed to ask the jurors detailed questions, and whether the excluded jurors were of the same race as the complaining party. Ibid.
Upon a prima facie showing, the burden shifts to the party exercising the challenges to come forward with evidence that the action was justifiable on the basis of situation-specific bias. That is, the challenging party must articulate clear and reasonably specific explanations for each challenge. The trial judge must then decide whether those explanations are genuine and reasonable or sham excuses and belatedly contrived. Id. at 537-38, 511 A.2d 1150.
Ultimately, the judge must weigh the one party's prima facie case against the other party's rebuttal to determine whether the complaining party has carried its burden of proving, by a preponderance *453 of the evidence, that the opposing party has exercised its challenges on the impermissible grounds of presumed group bias. If this burden is sustained, the jurors already selected must be dismissed and the remaining venire must be quashed. Id. at 539, 511 A.2d 1150.
Although our New Jersey case law has not previously dealt with this issue in the context of a civil case, the United States Supreme Court has decided that these principles must be carried over to civil trials. In Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), it was held that the equal protection rights of the excluded jurors are violated when race-based challenges are made. 500 U.S. at 618, 111 S.Ct. at 2081, 114 L.Ed.2d at 672. Moreover, when a private litigant in a civil trial selects a jury, he becomes a government actor for the limited purpose of using peremptory challenges. This is because jury selection is a uniquely governmental function delegated to private litigants by the government, and attributable to the government for purposes of invoking the constitutional protections against race discrimination. 500 U.S. at 627, 111 S.Ct. at 2086, 114 L.Ed.2d at 677. Further, because of the close relation between an excluded juror and the litigant opposing the exclusion, because the litigant suffers an injury by virtue of the racial discrimination which infects the entire judicial process, and because excluded jurors have no means of protecting their own rights, the litigant should be granted third-party standing to challenge the exclusion on equal protection grounds. 500 U.S. at 629, 111 S.Ct. at 2087, 114 L.Ed.2d at 679.
The present case, although not unique, is different than Gilmore which involved the exclusion of seven African-Americans by use of peremptory challenges, in that there was only one black venire person. Hence, when the defense challenged that juror, plaintiffs asserted that their prima facie case was automatically established; whereas defendants believed that a challenge to a single African-American juror could not establish a "pattern." The end result of accepting defendants' position would be that a party would receive *454 "one free" improper challenge in circumstances where only one peremptory challenge is needed to assure an all-white jury. This consequence must be balanced against the result that when there is only one minority venire person on the panel, that juror cannot be excluded unless the defense is prepared to explain why. Other jurisdictions have split on this issue.[2] We, however, find the latter consequence less onerous.
We find no abuse of discretion by the trial judge in his requiring defense counsel to explain the reason for the challenge of the only African-American as if a prima facie case had been established. Indeed, we consider it prudent in such circumstances, upon request, for a trial judge to proceed in such a manner. See State v. Gilliam, 224 N.J. Super. 759, 766, 541 A.2d 309 (App.Div. 1988) (where prosecutor had excluded the only black on the venire, this court assumed, without deciding, that the *455 burden had shifted to the State to rebut the defendant's prima facie showing of discrimination).
We, therefore, turn to defendants' explanation. Plaintiffs contend that the explanation was pretextual because other jurors were not challenged who had as limited educational and occupational skills as the excused minority juror. Defendants maintain, however, that the degree of the articulateness of the juror in question caused them to believe that he would not be able to comprehend the complex medical malpractice case that was about to unfold.
Although the responses of the juror were somewhat limited, we cannot say from the cold transcript presented to us, whether or not there may have been something conveyed in person to support that view. "Inherent in the problem is distinguishing between discrimination, which is never overtly acknowledged and often is subtly concealed, and the good-faith objection based on a legitimate subjective reaction." State v. Watkins, 114 N.J. 259, 267, 553 A.2d 1344 (1989). The trial judge was in the best position to assess the subtle nuances not conveyed by the record, and to gauge the reactions of the attorneys. His conclusion that the explanation offered by defense counsel was not a sham or a pretext must be accorded deference by this court in the absence of some affirmative showing to the contrary. The judge had ample time to reflect on his initial impression when the issue was presented to him on the motion for a new trial. He was clear in expressing his conclusion: "I felt and still feel that her exercise of the peremptory challenge was reasonable and was not pretextual or a sham." We find no reversible error on this point.
In their second point, plaintiffs contend that the court improperly denied them additional peremptory challenges which plaintiffs had requested, pursuant to R. 1:8-3(c), on the ground that the two defendants had substantial identity of interests. Under R. 1:8-3(c), each party in a civil action is entitled to six peremptory challenges. Parties represented by the same attorney are deemed one party for the purposes of this rule.

*456 Where, however, multiple parties having a substantial identity of interest in one or more issues are represented by different attorneys, the trial court in its discretion may, on application of counsel prior to the selection of the jury, accord the adverse party such additional number of peremptory challenges as it deems appropriate in order to avoid unfairness to the adverse party.
[Ibid.]
Before jury selection began, plaintiffs moved to be allowed six additional peremptory challenges under the rule. Defendants opposed plaintiffs' application on the ground that they each stood on their own and that separate allegations had been lodged against each. The court denied the application without prejudice and told plaintiffs to renew it later should prejudice arise. Plaintiffs' motion for a new trial raised this issue. At that time, the trial judge noted that plaintiffs had used only four of their six challenges and that they had failed to renew their application at a later time. He, therefore, ruled that no prejudice had been shown. We need not delve into the merits of whether plaintiff was entitled to additional challenges, as we are convinced, considering the record as a whole, that plaintiffs have failed to show any prejudice.
Plaintiffs' argument that the trial judge erred in excluding testimony by the decedent's mother regarding the out-of-court statements made by the decedent's sister has merit. See N.J.R.E. 801(c) (Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). The witness sought to testify that her daughter told her that the decedent may have pneumonia. Plaintiffs offered the testimony not to show that decedent in fact had pneumonia at that time, but rather to show that decedent and her mother knew how to take steps to get treatment if she had been advised of the condition. Where statements are offered, not for the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result thereof, the statements are not deemed inadmissible hearsay. See Jugan v. Pollen, 253 N.J. Super. *457 123, 136-37, 601 A.2d 235 (App.Div. 1992); Statham v. Bush, 253 N.J. Super. 607, 615, 602 A.2d 779 (App.Div. 1992).
Nonetheless, reversible error was avoided, as the trial judge, after sustaining the objection, permitted counsel to ask the mother whether, as a result of her conversation with her daughter, she changed her course of action regarding decedent's care. Decedent's mother testified that, as a result of her conversation with her daughter, she immediately took steps to call an ambulance. The additional value of having the jury know precisely what was said would have added little. There was no prejudice and the error was harmless. R. 2:10-2.
Affirmed.
NOTES
[1] The Gilmore Court held that the challenging party need not be a member of that same group. 103 N.J. at 536 n. 9, 511 A.2d 1150. Although the Batson Court had held to the contrary, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87, that requirement was subsequently eliminated by the United States Supreme Court in its decision in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).
[2] Compare, e.g., United States v. Clemons, 843 F.2d 741, 746 (3d Cir.) (rejecting per se rule that magic number or percentage of strikes is needed to trigger Batson's burden-shifting), cert. denied, 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988); State v. Bailey, 160 Ariz. 277, 281, 772 P.2d 1130, 1134 (1989) (prima facie case under Batson established where prosecutor used peremptory to strike only black person on the panel); Stanley v. State, 313 Md. 50, 542 A.2d 1267, 1283-85 (1988) (prima facie case made out where one black venireman is excluded); Commonwealth v. Harris, 409 Mass. 461, 567 N.E.2d 899, 903 (1991) (Batson applies to the challenge of a single prospective juror, and a "pattern" of challenges is not the exclusive basis for making a prima facie showing of impropriety); State v. Tuck, 80 Ohio App.3d 721, 610 N.E.2d 591, 594 (1992) (Batson applies even where the only black juror is removed; a repetitive pattern need not be shown); Brown v. State, 762 P.2d 959, 962 (Okla. Crim. App. 1988) (prima facie case made out even though there was only one black juror on the panel); State v. Bass, 189 W. Va. 416, 432 S.E.2d 86 (1993) (prima facie case made out where challenge was used to remove the only black person from the venire); but see Morse v. State, 593 N.E.2d 194, 196 (Ind. 1992) (no prima facie showing where State struck the only black venireman and where there was no other evidence of purposeful discrimination); State v. Green, 558 So.2d 1263, 1265 (La. Ct. App.) (no prima facie case where the only black juror on the venire was challenged), writ denied, 564 So.2d 317 (La. 1990); People v. Slaughter, 138 A.D.2d 835, 525 N.Y.S.2d 942, 943 (no prima facie showing where the only black venireperson on panel was struck), appeal denied, 72 N.Y.2d 866, 532 N.Y.S.2d 516, 528 N.E.2d 907 (1988).