720 A.2d 632 (1998)
316 N.J. Super. 462
STATE of New Jersey, Plaintiff-Respondent,
v.
John CLARK, Defendant-Appellant.
STATE of New Jersey, Plaintiff-Respondent,
v.
Walter Ronell GRIGGS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 1998.
Decided December 4, 1998.
*634 Ivelisse Torres, Public Defender, for defendant-appellant in both appeals (Donald T. Thelander, Assistant Deputy Public Defender, of counsel and on the brief in A-6841-95T4; Mark H. Friedman, Assistant Deputy Public Defender, of counsel and on the brief in A-7511-95T4).
Thomas V. Manahan, Union County Prosecutor, for plaintiff-respondent in both appeals (Steven J. Kaflowitz, Assistant Prosecutor, of counsel; Ann Luvera and Paul Condon, Assistant Prosecutors, on the brief in A-6841-95T 4; Mr. Condon, of counsel and on the brief in A-7511-95T4).
Defendant-appellant, John Clark, filed a pro se supplemental brief.
Before Judges SKILLMAN, PAUL G. LEVY and LESEMANN.
*633 The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal involves the procedures a trial court is required to follow when a defendant asserts that the prosecution has used its peremptory jury challenges to exclude members of a cognizable group.
Tried before a jury, defendants were found guilty of armed robbery, in violation of N.J.S.A. 2C:15-1, felony murder, in violation of N.J.S.A. 2C:11-3a(3), possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a, possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5b, and conspiracy, in violation of N.J.S.A. 2C:5-2. In addition, the jury acquitted defendants of a charge of purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3a(1),(2).
The court sentenced Clark to a life sentence, with thirty years of parole ineligibility, for felony murder, and a consecutive ten year term, with five years of parole ineligibility, for possession of a weapon for an unlawful purpose. In addition, the court imposed a concurrent term of five years imprisonment for possession of a handgun without a permit. It merged Clark's other convictions into his conviction for felony murder and also imposed the prescribed VCCB and SNSF assessments.
The court sentenced Griggs to a thirty year term of imprisonment without parole for felony murder. In addition, the court imposed concurrent terms of ten years imprisonment, with five years of parole ineligibility, for possession of a weapon for an unlawful purpose, and five years imprisonment for possession of handgun without a permit. It also imposed the prescribed VCCB and SNSF assessments.
Both defendants have appealed. Because the appeals arise out of a joint trial and the issues substantially overlap, we consolidate them.
The initial argument of both defendants is that the prosecutor violated their constitutional rights to equal protection of the law and to trial by a jury drawn from a representative cross-section of the community by using peremptory challenges to remove six prospective black jurors. We conclude that the trial court failed to make adequate findings with respect to the prosecutor's alleged discriminatory use of her peremptory challenges. We also conclude that the record is inadequate for us to determine whether the prosecutor's use of peremptory challenges resulted in a denial of defendants' constitutional rights because it does not indicate whether there were any blacks on the jury. Consequently, the case must be remanded to the trial court to supplement the record, make adequate findings of fact and reconsider its conclusion that defendants failed to establish that the prosecutor used her peremptory challenges in a racially discriminatory manner.
Both the United States and New Jersey Constitutions prohibit the use of peremptory challenges to remove prospective jurors on the basis of race. In Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69, 87 (1986), the Supreme Court of the United States held that the Equal Protection *635 Clause of the Fourteenth Amendment forbids a prosecutor from exercising peremptory challenges to remove jurors on the basis of race, and that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial."[1] In State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986), the Supreme Court of New Jersey held that Article I, paragraphs 5, 9, and 10 of the New Jersey Constitution forbids a prosecutor from exercising peremptory challenges to remove potential petit jurors who are members of a cognizable group on the basis of presumed group bias.[2]
Under both the United States and New Jersey Constitutions, the determination of whether the prosecution has exercised peremptory challenges in a discriminatory manner involves a three-step procedure. As described in Gilmore, the defendant initially has the burden to make a "prima facie showing that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds." 103 N.J. at 535, 511 A.2d 1150. To satisfy this burden, a defendant "must establish that the potential jurors wholly or disproportionately excluded were members of a cognizable group within the meaning of the representative cross-section rule" and that "there is a substantial likelihood that the peremptory challenges resulting in the exclusion were based on assumptions about group bias rather than any indication of situation-specific bias." Id. at 535-36, 511 A.2d 1150. If a defendant makes this prima facie showing, "[t]he burden shifts to the prosecution to come forward with evidence that the peremptory challenges under review are justifiable on the basis of concerns about situation-specific bias." Id. at 537, 511 A.2d 1150. To satisfy its burden, "the State must articulate `clear and reasonably specific' explanations of its `legitimate reasons' for exercising each of the peremptory challenges." Ibid. (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207, 218 (1981)). Finally, if the State presents such reasons, "the trial court must judge the defendant's prima facie case against the prosecution's rebuttal to determine whether the defendant has carried the ultimate burden of proving, by a preponderance of the evidence, that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds of presumed group bias." Id. at 539, 511 A.2d 1150. Similarly, the Supreme Court has indicated that under Batson,
once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.
[Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770-71, 131 L.Ed.2d 834, 839 (1995).]
Although a similar three step procedure is used under both the United States and New Jersey Constitutions, the prosecution must satisfy a heavier burden under the New Jersey Constitution to overcome a prima facie showing that it has exercised peremptory challenges on constitutionally-impermissible grounds. In Purkett v. Elem, supra, the Supreme Court of the United States held:
The second step of this process does not demand an explanation that is persuasive, *636 or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."
[514 U.S. at 767-68, 115 S.Ct. at 1771, 131 L.Ed.2d at 839 (quoting Hernandez v. New York, supra, 500 U.S. at 360, 111 S.Ct. at 1866, 114 L.Ed.2d at 406 (plurality opinion)).]
In fact, the Court in Purkett indicated that the prosecution's burden to come forward with a race neutral explanation for the exercise of a peremptory challenge can be satisfied even by reasons which are "silly" or "superstitious." Ibid.
In contrast, our Supreme Court has held that the prosecution's burden under the New Jersey Constitution can be satisfied only by the presentation of reasons "that are reasonably relevant to the particular case on trial or its parties or witnesses." Gilmore, supra, 103 N.J. at 538, 511 A.2d 1150 (quoting People v. Wheeler, 22 Cal. 3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, 765 (Cal.1978)). "The State needs to show a genuine and reasonable ground for believing that a prospective juror might have an individual or personal bias that would make excusing him or her rational and desirable." State v. McDougald, 120 N.J. 523, 555, 577 A.2d 419 (1990); see also James H. Coleman, Jr., The Evolution of Race in the Jury Selection Process, 48 Rutgers L.Rev. 1105, 1132-33 (1996) ("New Jersey has adopted a stricter rule than Purkett`s implausible rule.").
The Supreme Court of New Jersey also has established a more demanding standard under the New Jersey Constitution with respect to the ultimate determination of whether the prosecution has exercised its peremptory challenges on impermissible grounds. In Purkett, supra, 514 U.S. at 769, 115 S.Ct. at 1771-72, 131 L.Ed.2d at 840, the Supreme Court of the United States held that when a defendant claims that the prosecution has made racially discriminatory use of its peremptory challenges, a trial court needs to consider only the "genuineness" of its purported non-racial motives for peremptory challenges, and not their "reasonableness." However, our Supreme Court has held that under the New Jersey Constitution, "[t]he trial court must decide whether [the prosecution has presented] genuine and reasonable grounds for believing that potential jurors might have situation-specific biases that would make excusing them reasonable and desirable, given the aim of empaneling a fair and impartial petit jury." Gilmore, supra, 103 N.J. at 537-38, 511 A.2d 1150 (emphasis added).
Our Supreme Court has recognized that the implementation of these procedures to prevent discrimination in the jury selection process may inhibit the unfettered exercise of peremptory challenges:
It may be that discrimination in the courtroom cannot be eradicated without incurring costs. If the cost is some constraint on counsel's otherwise unbridled freedom in selecting jurors, we believe that it is a price worth paying. The alternative, that counsel could exclude a potential juror merely because the juror is a member of a cognizable group, is unthinkable.

[State v. Watkins, 114 N.J. 259, 267, 553 A.2d 1344 (1989).]
Because a defendant's claim that the prosecution has exercised peremptory challenges in a discriminatory manner is reviewed under more demanding standards under the New Jersey Constitution than under the United States Constitution, a trial court only needs to consider whether the prosecution's use of peremptory challenges to remove potential black jurors has violated the New Jersey Constitution.
In this case, defendants first objected to the prosecutor's use of peremptory challenges after she used her first two challenges to remove two blacks from the jury. One of the defense counsel stated:
My client is black, the co-defendant is black and also the victim, who has a right to a jury of his peers, is also black and the prosecutor's two and only two peremptory challenges excused two blacks. They answered all the questions of the Court in a negative fashion as to any bias. They said they could be reasonable and would be *637 reasonable. I object to the usage of the peremptory challenges of the two jurors.
The trial court summarily rejected the objection, stating:
I think you're premature. There's still two blacks on the jury and there's a whole load of blacks in the back. She only exercised two challenges. It's certainly the quickest Gilmore motion I ever heard and it's denied.
After the prosecutor used her fourth peremptory challenge to remove another black from the jury, defendants renewed their objection. However, the court again summarily rejected the objection as premature, stating:
We still have African Americans on the jury. There's still African Americans in the back of the room. I don't think there's any pattern of systematically excusing a given recognizable group because there are those in the jury that are African Americans sitting there. There's plenty other reasons why those challenges could have been made. The motion is still premature.
After the prosecutor used her next three challenges to remove three more blacks from the jury, defendants again objected. In response, the trial court stated to the prosecutor:
[Y]ou exercised seven challenges and six of them are black people. I do think that a presumptive showing has been made by the defense for you to explain the challenges.
The prosecutor then gave the following reasons for the use of her peremptory challenges:
The first one, black female, your Honor. Every time I looked at her she refused to look at me. I always make a point to see if at all the juror would look at the State's table. I have seen jurors that stare at the State's table. I have seen jurors that stare at defense table. I felt she refused to look in my direction. She also appeared to me to be an angry person. She appeared to be stand-offish. I'm looking for someone who would be willing to talk to other jurors on the panel.
I also note she has two boys, 18, five. She's an unmarried mother. I felt as an unwed, unmarried mother that she may relate too much to the defendants as her sons. That's why I excused her.
Number two is a black male. He was arrested by the police. He had the experience of being handcuffed by the police. I don't want anyone on the panel who had that experience.
Number three was a white male, chemist. I personally disliked him.
Number four is a black male, newspaper reporter for the Star-Ledger. Up there, your Honor, there's an enormous amount of drug dealing, all my witnesses are drug dealers. I'm afraid, your Honor, he would be prejudiced against my witnesses, who, by the way, are all black, are all minorities and my victim, as you know, is a black male who was a drug dealer. So I'm worried about him being prejudiced against my witnesses.
The next was a black female, she's older. She's the one that actually didn't want to be on the panel in the first place. She appeared to be extremely hesitant in my eyes to be able to render a verdict of guilty.
....
Next is ... Michael McKenzie, from Linden. He was the one that the police couldn't find his perpetrator. He felt that the police did a poor job and that unless we proved beyond any doubt, he might feel that perhaps the police weren't doing their job. I also felt he looked a little young. I'm afraid he might relate to the youth of the defense.
Also, the last man, he didn't speak English very well. He was a foreigner. I'm afraid, your Honor, that because it appeared to me he actually has a foreign sounding name that Englishhe might have difficulty following witnesses in this case who are not articulate and I need somebody to follow this case.
When the prosecutor completed the statement of reasons for her exercise of peremptory challenges, counsel for one of the defendants attempted to respond:

*638 [Defense Counsel]: To respond to the prosecutor's position, she states she's concerned one of the jurors was robbed. The prosecutor never inquired of juror number 11 if the perpetrator, who was white, if the perpetrator was caught.
THE COURT: I asked that question specifically because she came in right after the other one and I thought that was important information and the person happened to be caught.
[Defense Counsel]: But there was never further inquiry whether the person was found guilty, brought to justice or otherwise.
THE COURT: I don't think you can ask those questions.
[Defense Counsel]: Okay. With respect to juror number one, the first juror, I believe
However, the court refused to hear further argument and summarily rejected defendants' objections to the prosecutor's use of her peremptory challenges:
THE COURT: Look, this is notGilmore is not a forum for you to disagree with her position. She has to come up with an explanation to show she's not challenging jurors on a representative of a cross section of the community on presumed group bias. It's up to the Appellate Division.
I find all the explanations to be perfectly good trial lawyer explanations and the Gilmore motion you make is denied.
[Defense Counsel]: With respect to juror number one, the prosecutor was concerned that the defendants would maybe resemble juror number one's age of the children. I think the victim is much closer to the age of the woman's children as opposed to our clients.
THE COURT: So we don't see the case the same way, you can't criticize what she's doing. You have got a legal right under Gilmore to make a good motion or you don't make a good motion. I ruled. Now is not time to quarrel with her over making challenges.
The prosecutor subsequently exercised peremptory challenges to excuse two additional prospective jurors, both of whom were apparently white, and jury selection was completed.
An appellate court will extend substantial deference to a trial court's findings relating to whether the prosecution has exercised its peremptory challenges on constitutionally-impermissible grounds. Gilmore, supra, 103 N.J. at 545, 511 A.2d 1150. However, once a defendant has made a prima facie showing of discriminatory use of peremptory challenges, as the court correctly found in this case, the trial court must make specific findings with respect to the prosecution's proffered reasons for exercising any disputed challenges. The court must consider whether those reasons are "reasonably relevant to the particular case on trial or its parties or witnesses." Id. at 538, 511 A.2d 1150 (quoting Wheeler, supra, 148 Cal.Rptr. 890, 583 P.2d at 765). Moreover, it is essential that separate findings be made with respect to each disputed challenge.
If the court finds that the prosecution has presented neutral reasons for exercising each disputed challenge, it must then "determine whether the defendant has carried the ultimate burden of proving, by a preponderance of the evidence, that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds of presumed group bias." Id. at 539, 511 A.2d 1150. In making this determination, the court must consider whether the prosecution has applied the proffered reasons for the exercise of the disputed challenges even-handedly to all prospective jurors. Id. at 541-42, 511 A.2d 1150; State v. Townes, 220 N.J.Super. 38, 42-43, 531 A.2d 381 (App.Div. 1987), certif. denied, 110 N.J. 296, 540 A.2d 1278 (1988). A nondiscriminatory reason for exercising a peremptory challenge which appears "genuine" and "reasonable" on its face may become suspect if the only prospective jurors with that characteristic who the prosecution has excused are members of a cognizable group.
In addition, the court must consider the overall pattern of the prosecution's use of its peremptory challenges. See Gilmore, supra, 103 N.J. at 542-43, 511 A.2d 1150; Russell v. *639 Rutgers Community Health Plan, Inc., supra, 280 N.J.Super. at 452, 655 A.2d 948; Townes, supra, 220 N.J.Super. at 42-43, 531 A.2d 381. Even if the reasons for each individual challenge appear sufficient when considered in isolation from the prosecution's other challenges, the use of a disproportionate number of peremptory challenges to remove members of a cognizable group may warrant a finding that those reasons are not genuine and reasonable.
Finally, the court must consider the composition of the jury ultimately selected to try the case. Although the presence on the jury of some members of the group alleged to have been improperly excluded "does not relieve the trial court of the responsibility to ascertain if any prospective juror was peremptorily challenged on a discriminatory basis," McDougald, supra, 120 N.J. at 556, 577 A.2d 419, this circumstance may be highly probative of the ultimate question whether the prosecution's proffered nondiscriminatory reasons for exercising peremptory challenges are genuine and reasonable.
The trial court did not make adequate findings to support its conclusion that defendants failed to establish that the prosecutor exercised her peremptory challenges on constitutionally-impermissible grounds. The court stated in conclusory language that it found "all [the prosecutor's] explanations to be perfectly good trial lawyer explanations." However, it failed to make specific findings with respect to the prosecutor's reasons for each of her disputed peremptory challenges. The court also failed to consider whether the prosecutor applied the proffered reasons in an even-handed manner to all prospective jurors or whether the overall pattern of her use of peremptory challenges indicated that her ostensibly race neutral reasons were not genuine and reasonable. In addition, the court made no finding as to the racial composition of the jury either at the time defendants objected to the prosecutor's alleged discriminatory use of her peremptory challenges or when jury selection was completed.
Moreover, we note that the reasons which the prosecutor gave for the exercise of several of her peremptory challenges of black jurors were questionable. For example, in justifying the excusal of Reggie Garret, a newspaper reporter who lived in Hillside and worked in Newark, the prosecutor stated that "there's an enormous amount of drug dealing" in Newark and that "all [of the State's] witnesses [were] drug dealers," and that she was worried about him being "prejudiced against my witnesses." However, it is unclear to us why a person who happens to work in a city in which there is a substantial amount of drug dealing would be likely to have a different attitude than any other prospective juror regarding the credibility of a drug dealer's testimony. We note that the prosecutor did not request the court to ask this prospective juror whether he had any familiarity with drug dealing as a result of his work and, if so, whether it would have any impact upon his capacity to be fair and impartial. We also note that several of the persons who were ultimately selected to sit on the jury also worked or lived in urban areas such as Elizabeth. Under these circumstances, the court was required to make detailed findings as to whether the prosecutor's purported reasons for the removal of this juror were genuine and reasonable or merely pretextual.
In justifying the excusal of another black juror, Michael McKenzie, the prosecutor relied upon the fact that he was a crime victim. She stated that "[the juror] felt that the police did a poor job and that unless we proved beyond any doubt, he might feel that perhaps the police weren't doing their job." However, this prospective juror never indicated that he thought the police had done a poor job in investigating the crime in which he was a victim; he only said that the perpetrators had not been apprehended. Furthermore, several of the persons ultimately selected to sit on the jury also were victims of crimes in which the perpetrators were not apprehended. In addition, the prosecutor told the court that this juror "looked a little young" and that she was "afraid he might relate to the youth of the defense." However, we note that Mr. McKenzie was married with two children, one eleven and the other thirteen years old, and that he was employed as a welder by the New Jersey Turnpike Authority. Under these circumstances, the *640 trial court had an obligation to carefully scrutinize the reasons which the prosecutor gave for using a peremptory challenge to remove this juror.
Although in Townes, supra, 220 N.J.Super. at 43-44, 531 A.2d 381, this court itself made the determination as to whether the prosecution's peremptory challenges had been used in a constitutionally-impermissible manner rather than remanding the issue to the trial court, such a disposition would not be appropriate in this case because the record does not indicate the racial composition of the jury. The State urges us to infer that there were blacks on the jury based upon a statement by the prosecutor during jury selection that she had "passed probably five or six times three black jurors on this panel." However, the record does not indicate when those passes occurred or whether the prospective black jurors to whom the prosecutor referred were actually selected to sit on the jury. We consider the racial composition of the jury to be too important a factor in determining whether the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds for us to rest a decision on speculative inferences drawn from this kind of cryptic comment. Therefore, on remand the trial court must make specific findings regarding the jury's racial composition. If there is any dispute among the trial participants regarding this issue, the court should hold a hearing to resolve it.
Accordingly, we remand the case to the trial court to supplement the record, make detailed findings of fact and reconsider its decision rejecting defendants' objections to the prosecutor's use of her peremptory challenges. The remand shall be completed within sixty days of the filing of this opinion. Jurisdiction is retained.
NOTES
[1] The Court subsequently held that a defendant of a different race than the excused jurors has standing to assert that the prosecution has exercised peremptory challenges in a discriminatory manner. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The Court has also held that the Equal Protection Clause prohibits the exercise of peremptory challenges on discriminatory grounds other than race. J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (gender); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (ethnicity).
[2] The constitutional prohibitions against the discriminatory use of peremptory challenges also apply to civil litigation. Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); Russell v. Rutgers Community Health Plan, Inc., 280 N.J.Super. 445, 453, 655 A.2d 948 (App.Div.), certif. denied, 142 N.J. 452, 663 A.2d 1359 (1995).