737 A.2d 172 (1999)
324 N.J. Super. 558
STATE of New Jersey, Plaintiff-Respondent,
v.
John CLARK, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Walter Ronell Griggs, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 1998.
Resubmitted after Remand May 17, 1999.
Decided August 12, 1999.
*174 Ivelisse Torres, Public Defender, for defendant-appellant in both appeals (Donald T. Thelander, Assistant Deputy Public Defender, of counsel and on the brief in A-6841-95T4; Mark H. Friedman, Assistant Deputy Public Defender, of counsel and on the brief in A-7511-95T4).
Thomas V. Manahan, Union County Prosecutor, for plaintiff-respondent in both appeals (Steven J. Kaflowitz, Assistant Prosecutor, of counsel; Ann Luvera and Paul Condon, Assistant Prosecutors, on the brief in A-6841-95T4; Mr. Condon, of counsel and on the brief in A-7511-95T4).
Appellant, John Clark, filed a pro se supplemental brief.
Before Judges SKILLMAN, PAUL G. LEVY and LESEMANN.
*173 The opinion of the court was delivered by SKILLMAN, J.A.D.
Tried before a jury, defendants were found guilty of armed robbery, in violation of N.J.S.A. 2C:15-1, felony murder, in violation of N.J.S.A. 2C:11-3a(3), possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a, possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5b, and conspiracy, in violation of N.J.S.A. 2C:5-2. In addition, the jury acquitted defendants of a charge of purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3a(1),(2).
The court sentenced Clark to a life sentence, with thirty years of parole ineligibility, for felony murder, and a consecutive ten year term, with five years of parole ineligibility, for possession of a weapon for an unlawful purpose. In addition, the court imposed a concurrent term of five years imprisonment for possession of a handgun without a permit. It merged *175 Clark's other convictions into his conviction for felony murder and imposed the prescribed VCCB and SNSF assessments.
The court sentenced Griggs to a thirty year term of imprisonment without parole for felony murder. In addition, the court imposed concurrent terms of ten years imprisonment, with five years of parole ineligibility, for possession of a weapon for an unlawful purpose, and five years imprisonment for possession of handgun without a permit. It merged Griggs' other convictions into his conviction for felony murder and imposed the prescribed VCCB and SNSF assessments.
Both defendants appealed. Because the appeals arise out of a joint trial and the issues substantially overlap, we consolidated them.
[At the court's direction, its recitation of all the issues defendants presented on appeal has been omitted from the published opinion.]
Upon an initial review of this appeal, we concluded that defendants' most substantial argument was that the prosecutor had used her peremptory challenges in a racially discriminatory manner. We also concluded that the trial court had failed to make adequate findings with respect to the prosecutor's alleged discriminatory use of her peremptory challenges and that the record was inadequate for this court to determine the issue. We noted in particular that the record failed to indicate whether there were any blacks on the jury ultimately selected to hear the case. Accordingly, we remanded the case to the trial court to supplement the record, make detailed findings of fact and reconsider its decision rejecting defendants' objections to the prosecutor's use of her peremptory challenges. State v. Clark, 316 N.J.Super. 462, 720 A.2d 632 (App.Div.1998).
Upon remand, the trial court determined on the basis of its own notes, the court clerk's notes taken during jury selection and the clerk's minute sheet that five of the fourteen jurors selected to sit on the case and four of the twelve jurors who found defendants guilty were black. The court also found that reviewing the State's peremptory challenges "individually and as a whole, there was good and sufficient reasons for each challenge." Therefore, the court reaffirmed its original decision rejecting defendants' claim that the prosecutor had exercised her peremptory challenges in a racially discriminatory manner.
The remand having been completed, the appeal is now before us for a final decision. After a careful review of the entire record, including the proceeding on remand, we conclude that, except for the argument that the trial court should have merged defendants' convictions for possession of a weapon for an unlawful purpose into their convictions for robbery and felony murder, defendants' arguments are without merit. Accordingly, we vacate defendants' convictions for possession of a weapon for an unlawful purpose but affirm their convictions and sentences in all other respects.
[At the court's direction, a preliminary discussion appearing at this point in the filed opinion has been omitted from the published opinion.]
Before discussing defendants' arguments, it is appropriate to summarize briefly the evidence presented at trial. The State presented testimony by five eyewitnesses to the crime. They testified that during the afternoon of November 1, 1994, the victim, Evan Graham, was selling heroin and cocaine at his usual location on a street corner in Elizabeth when defendants, armed with handguns, accosted him, took money from his pockets, hit him in the back of the head with a pistol butt, and then shot him point-blank in the chest. Although none of these witnesses saw the fatal shot fired, four of them saw defendants approach the victim with handguns and rob him a few moments before they heard the shot. These witnesses all knew defendants from the neighborhood and identified them from photographic arrays and again at trial. The five eyewitnesses were also involved in drug trafficking, but *176 the State elicited evidence that none of them had been offered any special consideration in exchange for their testimony at defendants' trial.
The State also presented testimony that when Clark was arrested, the police asked him where the gun was, and he replied, "it's not here." At police headquarters, when officers told Clark there were witnesses to the murder, he responded: "All you got are the words of the nigger drug dealers on the corner. Ain't nobody going to take their word. F___ them. They mean nothing to me. They're afraid of me." Neither defendant took the stand or presented any alibi evidence.

I
Initially, we consider defendants' argument that the prosecutor violated their constitutional rights to equal protection of the law and trial by a jury drawn by a representative cross-section of the community by using peremptory challenges to remove six prospective black jurors. The basic three-step procedure that a trial court must apply in assessing a claim that a prosecutor has exercised peremptory challenges in a discriminatory manner was set forth in our prior opinion:
[D]efendant initially has the burden to make a "prima facie showing that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds." To satisfy this burden, a defendant "must establish that the potential jurors wholly or disproportionately excluded were members of a cognizable group within the meaning of the representative cross-section rule" and that "there is a substantial likelihood that the peremptory challenges resulting in the exclusion were based on assumptions about group bias rather than any indication of situation-specific bias." If a defendant makes this prima facie showing, "[t]he burden shifts to the prosecution to come forward with evidence that the peremptory challenges under review are justifiable on the basis of concerns about situation-specific bias." To satisfy its burden, "the State must articulate `clear and reasonably specific' explanations of its `legitimate reasons' for exercising each of the peremptory challenges." Finally, if the State presents such reasons, "the trial court must judge the defendant's prima facie case against the prosecution's rebuttal to determine whether the defendant has carried the ultimate burden of proving, by a preponderance of the evidence, that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds of presumed group bias."
[316 N.J.Super. at 468-69, 720 A.2d 632 (quoting State v. Gilmore, 103 N.J. 508, 535-37, 539, 511 A.2d 1150 (1986)) (citations omitted).]
We also explained that if the court finds that a defendant has made a prima facie showing of discriminatory use of peremptory challenges and the prosecution has presented neutral reasons for exercising each disputed challenge, the court then has the responsibility:
[to] "determine whether the defendant has carried the ultimate burden of proving, by a preponderance of the evidence, that the prosecution exercised its peremptory challenges on constitutionallyimpermissible grounds of presumed group bias." [Gilmore, supra, 103 N.J. at 539, 511 A.2d 1150.] In making this determination, the court must consider whether the prosecution has applied the proffered reasons for the exercise of the disputed challenges even-handedly to all prospective jurors. A nondiscriminatory reason for exercising a peremptory challenge which appears "genuine" and "reasonable" on its face may become suspect if the only prospective jurors with that characteristic who the prosecution has excused are members of a cognizable group.
In addition, the court must consider the overall pattern of the prosecution's use of its peremptory challenges. Even *177 if the reasons for each individual challenge appear sufficient when considered in isolation from the prosecution's other challenges, the use of a disproportionate number of peremptory challenges to remove members of a cognizable group may warrant a finding that those reasons are not genuine and reasonable.
Finally, the court must consider the composition of the jury ultimately selected to try the case. Although the presence on the jury of some members of the group alleged to have been improperly excluded "does not relieve the trial court of the responsibility to ascertain if any prospective juror was peremptorily challenged on a discriminatory basis," [State v. McDougald, 120 N.J. 523, 556, 577 A.2d 419 (1990) ], this circumstance may be highly probative of the ultimate question whether the prosecution's proffered nondiscriminatory reasons for exercising peremptory challenges are genuine and reasonable.
[Id. at 473-74, 720 A.2d 632 (citations omitted).]
We concluded that the trial court had not made adequate findings to support its conclusion that defendants failed to establish that the prosecutor exercised her peremptory challenges in a discriminatory manner. We noted that the trial court "failed to make specific findings with respect to the prosecutor's reasons for each of her disputed peremptory challenges." Id. at 475, 720 A.2d 632. We also noted that the court "failed to consider whether the prosecutor applied the proffered reasons in an even-handed manner to all prospective jurors or whether the overall pattern of her use of peremptory challenges indicated that her ostensibly race neutral reasons were not genuine and reasonable." Ibid. We further noted that "the court made no finding as to the racial composition of the jury either at the time defendants objected to the prosecutor's alleged discriminatory use of her peremptory challenges or when jury selection was completed." Ibid. Consequently, we remanded to the trial court "to supplement the record, make detailed findings of fact and reconsider its decision rejecting defendants' objections to the prosecutor's use of her peremptory challenges." Id. at 477, 720 A.2d 632.
On remand, the trial court found that five of the fourteen jurors selected to sit on the jury were black.[1] One of those jurors was excused before deliberations; thus, four members of the jury which found defendants guilty were black. The court also made individual factual findings with respect to the reasonableness and genuineness of each of the prosecutor's peremptory challenges of prospective black jurors, and concluded that "reviewing these challenges individually and as a whole, there was good and sufficient reasons for each challenge."
Defendants have filed supplemental briefs which argue that the trial court erred in various respects in its decision on the remand. First, defendants contend that the record does not support the court's finding that there were five blacks on the jury. This argument relates solely to the identity of a single juror, juror number three. Near the conclusion of jury selection, a prospective white juror named Cynthia Patriarca was seated as juror number three. Although the trial transcript does not indicate that this juror was excused, the court's own notes and the court clerk's minute sheet indicate that the person eventually seated as juror number three was Angie Amour, who is black. Moreover, even though the transcript does not indicate that Amour was called and questioned during the jury selection process, it does reflect the following question by the court at the conclusion of jury selection:
Now, Miss Amour, Miss Adorno, would sitting on this case for the length of time
*178 I discussed cause either one of you any undue hardship?
Since Adorno, the next to the last person selected for the jury, was called after the court had already asked the other jurors whether jury service would cause them undue hardship, the court's hardship inquiry to Adorno and Amour provides some corroboration for the court's notes and clerk's minute sheet, which show that Amour was seated as juror number three. Therefore, we see no basis for disturbing the trial court's finding that there were five blacks on the jury.
Defendants also argue that the trial court erred in assuming that the ultimate composition of the jury was dispositive of defendants' claim that the prosecutor exercised her peremptory challenges in a racially discriminatory manner. Defendants point to the trial court's statement that it considered "the final composition of the jury [to be] the end-all and be-all for the Appellate Division."
It is clear that a prosecutor may be found to have exercised individual peremptory challenges in a discriminatory manner even though the jury ultimately selected includes a substantial percentage of the minority group against whom such challenges were directed. In McDougald, supra, 120 N.J. at 556, 577 A.2d 419, the Court rejected the State's argument that the defendant failed to establish that the prosecutor exercised his peremptory challenges in a discriminatory manner because the percentage of blacks on the jury exceeded the percentage residing in the county:
The fact that African-Americans actually served on this jury is not dispositive of whether there was racial discrimination and does not relieve the trial court of the responsibility to ascertain if any prospective juror was peremptorily challenged on a discriminatory basis.
We made the same point in our original opinion: "[T]he presence on the jury of some members of the group alleged to have been improperly excluded `does not relieve the trial court of the responsibility to ascertain if any prospective juror was peremptorily challenged on a discriminatory basis.'" Clark, supra, 316 N.J.Super. at 474, 720 A.2d 632 (quoting McDougald, supra, 120 N.J. at 556, 577 A.2d 419); see also United States v. Bishop, 959 F.2d 820, 827 (9th Cir.1992).
Consequently, if it appeared that the trial court's decision on the remand rested on the erroneous assumption that the presence on the jury of a substantial percentage of black jurors was dispositive of defendants' claim that the prosecutor's peremptory challenges were racially discriminatory, we would be compelled to remand the case a second time. However, most of the court's comments concerning the significance of the racial composition of the jury were made in an introductory colloquy with counsel rather than in its ultimate decision. Moreover, the court did consider each disputed peremptory challenge individually, as our original opinion directed, 316 N.J.Super. at 475, 720 A.2d 632, and concluded that "there was good and sufficient reason for each challenge." Therefore, in view of the "substantial deference" which an appellate court is required to extend to "a trial court's findings relating to whether the prosecution has exercised its peremptory challenges on constitutionally-impermissible grounds," id. at 473, 720 A.2d 632, we are not prepared to conclude that the court's findings regarding the individual disputed peremptory challenges were tainted by its statements concerning the significance of the composition of the jury ultimately selected to sit on the case.
Defendants also argue that the trial court erred in treating the racial composition of the jury ultimately selected to hear the case as dispositive, and ignoring the jury's racial composition at the time the court ruled that defendants had made a prima facie showing of group bias. We agree that the court should have focused upon the composition of the jury when *179 defendants objected to the prosecutor's exercise of her peremptory challenges.[2] When the court rejected this objection at trial, its ruling was based on the course of jury selection up to that point; the court obviously could not have anticipated how the prosecutor would exercise her remaining peremptory challenges or what the ultimate composition of the jury would be. Most significantly, if any of the prosecutor's peremptory challenges were racially discriminatory, that discrimination could not be cured by the prosecutor refraining from the use of peremptory challenges to exclude black jurors during the remainder of the jury selection process. McDougald, supra, 120 N.J. at 556, 577 A.2d 419. We also agree with defendants that the record indicates there were two blacks on the jury when defendants objected to the prosecutor's peremptory challenges.
Although the racial composition of the jury at the time of alleged discriminatory peremptory challenges is most probative of the prosecutor's intent, this does not mean that the prosecutor's subsequent use of peremptory challenges, or the ultimate racial composition of the jury, have no probative value in determining whether the prosecutor exercised peremptory challenges in a discriminatory manner. In Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69, 87 (1986), the Court held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." However, the Court did not say that a defendant or prosecutor is foreclosed from presenting evidence of a prosecutor's use of peremptory challenges in other cases prior to or subsequent to the defendant's trial to show whether the prosecutor's peremptory challenges were exercised with discriminatory intent. Moreover, in Gilmore, supra, 103 N.J. at 536, 511 A.2d 1150, the Court indicated that "[o]ne of the relevant circumstances that may bespeak discrimination is systematic exclusion in case after case over an extended period of time." Since evidence of how a prosecutor has exercised peremptory challenges in other cases is still considered probative of whether the prosecution had a discriminatory intent in exercising peremptory challenges, it follows a fortiori that the exercise of other peremptory challenges in the case before the court is probative of that intent, regardless of when those challenges were exercised. In fact, we indicated in our original opinion that "the court must consider the overall pattern of the prosecution's use of its peremptory challenges" in determining whether any individual challenge was discriminatory. 316 N.J.Super. at 474, 720 A.2d 632. Therefore, even though the racial composition of the jury when defendants objected to the prosecutor's peremptory challenges has the greatest probative value, we are satisfied that the entire selection process, including the ultimate composition of the jury, is relevant to the determination of whether the prosecutor's intent was discriminatory. See People v. Turner, 8 Cal.4th 137, 32 Cal.Rptr.2d 762, 878 P.2d 521, 536 (1994) ("While the fact that the jury included members of a group allegedly discriminated against is not conclusive, it is an indication of good faith in exercising peremptories."), cert. denied, 514 U.S. 1068, 115 S.Ct. 1702, 131 L.Ed.2d 564 (1995); see also State v. Bellamy, 260 N.J.Super. 449, 453, 616 A.2d 1323 (App. Div.1992), certif. denied, 133 N.J. 436, 627 A.2d 1141 (1993).
We turn next to the trial court's findings regarding the prosecutor's reasons for exercising her peremptory challenges of prospective black jurors. In reviewing those findings, we must keep in mind that in determining whether a prosecutor *180 has made discriminatory use of peremptory challenges, an appellate court "ultimately must depend on the [trial] judge's sense of fairness and impartial judgment." Gilmore, supra, 103 N.J. at 545, 511 A.2d 1150. Consequently, we "will extend substantial deference to a trial court's findings relating to whether the prosecution has exercised its peremptory challenges on constitutionally impermissible grounds." Clark, supra, 316 N.J.Super. at 473, 720 A.2d 632.
Defendants do not question the adequacy of the prosecutor's reasons for challenging two prospective black jurors (Terita Gibson and Vignier Carideaud). Therefore, it is only necessary to consider her stated reasons for challenging the other four prospective black jurors.
The prosecutor gave the following reasons for excusing the first of those jurors, Amosandra Johnson:
The first one, black female, your Honor. Every time I looked at her she refused to look at me. I always make a point to see if at all the juror would look at the State's table. I have seen jurors that stare at the State's table. I have seen jurors that stare at defense table. I felt she refused to look in my direction. She also appeared to me to be an angry person. She appeared to be stand-offish. I'm looking for someone who would be willing to talk to other jurors on the panel.
I also note she has two boys, 18, five. She's an unmarried mother. I felt as an unwed, unmarried mother that she may relate too much to the defendants as her sons. That's why I excused her.
In concluding that those reasons were adequate, the trial court stated:
Amos Candra Johnson was the first juror excusedAfrican American juror excused by Ms. McMullen, and when the State was initially questioned [regarding] the defendants' first Gilmore objection the Assistant Prosecutor indicated it was for "personal reasons" that she excused this juror.
Later, however, the Assistant Prosecutor expanded her explanation by indicating that she could not establish eye contact with this juror and that she appeared to be an "angry person." And additionally, as an unmarried mother, the Assistant Prosecutor felt that the juror would sympathize with the defendants who were close in age to her children.
This reason, particularly the eye contact, is akin to a "hunch" challenge which was not eviscerated by Gilmore as long as the totality of the challenges do not "create a prima facie case or group bias." Gilmore, 103 N.J. at 539, 511 A.2d 1150.
Clearly, lawyers must be allowed to exercise their judgment and be able to employ their life experiences when using preemptory [sic] challenges as long as they do not do so improperly. It is not unimportant for an attorney to establish eye contact with a potential juror.
Additionally, a trained trial lawyer can frequently determine a potential juror's then emotional situation within a short period of time. It's not difficult sometimes to conclude that you've got jurors that don't want to be here or that may be angry. I frequently can pick them just sitting out in the back of the jury room before they're even addressed in the jury box by the body language.
This Court finds that the stated reasons for excusing this juror to be valid ones and a permissible exercise of professional judgment and an experienced prosecutor's "feel" for the juror.
We agree, substantially for the reasons expressed by the trial court, that the prosecutor's reasons for excusing Johnson were reasonable and genuine.
The prosecutor gave the following reason for excusing the second juror, Mark Murray:
*181 Number two is a black male. He was arrested by the police. He had the experience of being handcuffed by the police. I don't want anyone on the panel who had that experience.
In concluding that this reason was adequate, the trial court stated:
The next juror is Mark Murray. Initially, the State indicated the juror was challenged for his "own personal reasons." But later, when called upon to give a more detailed explanation the Assistant Prosecutor noted that this juror had been arrested by the police and had been handcuffed.
....
Actually, this juror had advised during the voir dire that he had been convicted of a crime, but the Court developed that it was really a disorderly persons offense. It may have been a leap of faith to conclude that he had been arrested by the police and had been handcuffed, but clearly, it was something thatan event that meant something to him to volunteer it in front of citizens, total strangers, that he had been "convicted of a crime."
Nonetheless, it certainly is not unusual; in fact, it's highly understandable for the State to challenge a juror with whom it had been in an adversarial relation in the past.
As defendants correctly point out, Murray never indicated that he had been "arrested and handcuffed"; he only said that he had been "accused of committing a crime," which turned out to be the disorderly persons offense of disorderly conduct. Moreover, the record does not indicate the disposition of this charge. However, the fact that a person has been charged with an offense, and thus was involved in the criminal justice system as a defendant, is reasonably relevant to selection as a juror in a criminal case. Furthermore, since there was no similarly situated white juror who the prosecutor failed to challenge, there is no basis for finding that the proffered reason for challenging this juror was not applied in an even-handed manner. Therefore, even though the prosecutor simply assumed that Murray had been arrested and handcuffed, this does not provide a sufficient foundation for finding that the prosecutor's stated reasons for excusing him were pretextual and that he was actually excused because he is black.
The prosecutor gave the following reasons for excluding Michael McKenzie, who was the victim of armed robbery in which the perpetrators were not apprehended:
[Prosecutor]: He was the one that the police couldn't find his perpetrator. He felt that the police did a poor job and that unless we proved beyond any doubt, he might feel that perhaps the police weren't doing their job. I also felt he looked a little young. I'm afraid he might relate to the youth of the defense.
The trial court stated:
He was a victim of a crime wherein the State did not apprehend the perpetrators. The potential existed that he was not pleased with the State then and could visit that displeasure on the State at this trial. This is a common and standard reason for challenging jurors and one that this Court find[s] to be genuine and reasonable.
The prosecutor's stated reasons for excusing McKenzie were race-neutral, and her concern that McKenzie might be displeased by the police's failure to apprehend the perpetrators of a violent crime committed upon him appears reasonably related to his selection to sit as a juror in a criminal case. Moreover, the only white prospective juror who was the victim of a crime had his car stolen, which is a much less traumatic experience than being a victim of an armed robbery.[3] Therefore, *182 the record would not support a finding that the prosecutor failed to apply this reason in an even-handed manner.
The prosecutor gave the following reason for the exercise of her disputed challenge of black juror Reggie Garret:
Number four is a black male, newspaper reporter for the Star-Ledger. Up there, your Honor, there's an enormous amount of drug dealing, all my witnesses are drug dealers. I'm afraid, your Honor, he would be prejudiced against my witnesses, who, by the way, are all black, are all minorities and my victim, as you know, is a black male who was a drug dealer. So I'm worried about him being prejudiced against my witnesses.
In holding that this reason was reasonable and genuine, the trial court stated:
Reggie Garret is a resident of Hillside who is an unmarried reporter for the Star Ledger who worked in Newark. The Assistant Prosecutor felt, not without some substance, that there is much drug-dealing in Newark which obviously can affect the quality of life of those who live and work there. Because the State witnesses were themselves drug-dealers, the Assistant Prosecutor felt that Mr. Garrick might not favor the State's case nor believe its witnesses.
Well, arguably, this analysis could be considered "a stretch." This is indeed a valid reason to excuse a juror. More importantly, this Court's records do not reveal that the State passed on any similarly situated white juror.
The prosecutor's proffered reason for challenging Garretthat he was a newspaper reporter who worked in Newark, where there is a substantial amount of drug dealing, and that consequently, he could be prejudiced against the eyewitnesses to the crime, all of whom were drug dealerswas facially race-neutral and reasonably related to this specific case. See Gilmore, supra, 103 N.J. at 537, 511 A.2d 1150. Therefore, we proceed to the question whether defendants "carried the ultimate burden of proving, by a preponderance of the evidence, that the prosecution exercised [this] peremptory challenge[ ] on constitutionally-impermissible grounds." Id. at 539, 511 A.2d 1150.
In our original opinion, we expressed particular concerns about the prosecutor's reason for challenging Garret:
[I]t is unclear to us why a person who happens to work in a city in which there is a substantial amount of drug dealing would be likely to have a different attitude than any other prospective juror regarding the credibility of a drug dealer's testimony. We note that the prosecutor did not request the court to ask this prospective juror whether he had any familiarity with drug dealing as a result of his work and, if so, whether it would have any impact upon his capacity to be fair and impartial. We also note that several of the persons who were ultimately selected to sit on the jury also worked or lived in urban areas such as Elizabeth.
[316 N.J.Super. at 475, 720 A.2d 632.]
At the oral argument on the remand, the prosecutor suggested that the fact that Garret was a newspaper reporter for the Star-Ledger may distinguish him from other people who work or live in urban areas. The State reiterates this point in its supplemental brief filed with this court:
It is not unreasonable to conclude that a reporter, employed by the Star Ledger, assigned to their Newark office, and who apparently covers general news events, writes articles pertaining to the drug distribution trade. Likewise, it is not ridiculous to conclude that such a reporter *183 would have a greater working knowledge of the level of pervasiveness and the overall effect upon society of the drug epidemic.
We still have some misgivings about the prosecutor's proffered reason for excusing Garret. However, in view of the substantial deference accorded a trial court's findings regarding the alleged discriminatory use of peremptory challenges and the fact that there were two blacks on the jury when Garret was challenged and five when jury selection was completed, we do not perceive an adequate basis to disturb the trial court's finding that defendants failed to show that the prosecutor's actual reason for this challenge was racially discriminatory.
In sum, we affirm the trial court's conclusion that defendants have not "carried the ultimate burden of proving, by a preponderance of the evidence, that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds of presumed group bias." Gilmore, supra, 103 N.J. at 539, 511 A.2d 1150.
[At the court's direction, its discussion of defendants' remaining arguments has been omitted from the published opinion.]
Accordingly, we vacate defendants' convictions for possession of a weapon for an unlawful purpose on the basis of merger. We affirm defendants' convictions and sentences in all other respects. We remand the cases for the entry of amended judgments which reflect the merger of their convictions for possession of a weapon for an unlawful purpose.
NOTES
[1] Although the trial court stated several times that the jury included six blacks, the record clearly indicates, and the State does not dispute, that there were at most five.
[2] As defendants note, such objections are generally raised at the conclusion of jury selection. When an objection to the prosecutor's use of peremptory challenges is made at that stage, there is no difference between the racial composition of the jury at the time of defendant's objection and at the conclusion of jury selection.
[3] Defendants note that two prospective white jurors had close relatives who had been victims of robberies. However, we perceive a difference between a juror whose relatives have been crime victims and one who has personally experienced that trauma. In any event, defense counsel excused one of those jurors before the prosecutor indicated that the panel was satisfactory. The other juror had cousins who were law enforcement officers in Elizabeth, which may have led the prosecutor to conclude she would be prosecution-oriented. Defense counsel also excused this juror.