952 A.2d 1112 (2008)
402 N.J. Super. 93
STATE of New Jersey, Plaintiff-Respondent,
v.
Oscar OSORIO, Defendant-Appellant.
Docket No. A-2067-05T4
Superior Court of New Jersey, Appellate Division.
Submitted October 30, 2007.
Decided August 4, 2008.
*1113 Yvonne Smith Segars, Public Defender, for appellant (Diane Toscano, Assistant Deputy Public Defender, of counsel and on the brief).
*1114 Paula T. Dow, Essex County Prosecutor, for respondent (Barbara A. Rosenkrans, Assistant Prosecutor, of counsel and on the brief).
Before Judges SKILLMAN, WINKELSTEIN and YANNOTTI.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal requires us to consider the principles that govern a trial court's consideration of a claim of the discriminatory use of peremptory challenges in light of recent decisions of the Supreme Court of the United States that modify the principles set forth in State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986).
A jury found defendant guilty of conspiracy to violate the narcotics laws, in violation of N.J.S.A. 2C:5-2; possession of cocaine, in violation of N.J.S.A. 2C:35-10(a)(1); possession of cocaine with the intent to distribute, in violation of N.J.S.A. 2C:35-5(a)(1) and (b)(3); possession of cocaine within 1000 feet of school property with the intent to distribute, in violation of N.J.S.A. 2C:35-7; possession of cocaine within 500 feet of a public housing facility with the intent to distribute, in violation of N.J.S.A. 2C:35-7.1; and employing a juvenile in a drug distribution scheme, in violation of N.J.S.A. 2C:35-6. The trial court sentenced defendant to a seven-year term of imprisonment, with five years of parole ineligibility, for employing a juvenile in a drug distribution scheme and a concurrent seven-year term for possession of cocaine within 500 feet of a public housing facility with the intent to distribute. The court merged defendant's conviction for possession of cocaine within 1000 feet of school property with the intent to distribute into his conviction for possession of cocaine within 500 feet of a public housing facility with the intent to distribute, except that the court imposed the three-year parole ineligibility period mandated by N.J.S.A. 2C:35-7, which survived the merger but is to be served concurrently. The court merged defendant's other convictions.
We affirmed defendant's convictions in an unreported opinion. State v. Osorio, No. A-1664-02 (App. Div., June 7, 2005). However, we concluded that the trial court had erred in failing to require the assistant prosecutor who tried the case to show that her first six peremptory challenges, all of which were used to excuse minority jurors (four African-Americans and two Hispanics), which the trial court found established a prima facie case of the discriminatory use of peremptory challenges against defendant, a Hispanic male, were justified on the basis of concerns about situation-specific bias. Consequently, we remanded the case to the trial court to determine whether the prosecutor had made discriminatory use of her peremptory challenges and directed the court to vacate defendant's conviction and order a new trial if it made this determination.
At the hearing on remand, which occurred more than three years after the trial, the trial judge indicated that he did not have any notes or specific recollection of jury selection. Moreover, the judge did not obtain a copy of the transcript of jury selection before conducting the hearing. However, the assistant prosecutor who tried the case produced notes that she had taken during jury selection and explained her reasons for using her first six peremptory challenges to excuse minority jurors based on those notes. Those reasons are discussed in detail later in this opinion. The attorney who had represented defendant at trial did not appear at the hearing and, because of the deadline established by this court for completion of the remand, the trial judge declined a request by the *1115 substitute attorney appearing on defendant's behalf to adjourn the hearing to afford defendant's trial counsel the opportunity to appear. The trial judge accepted the assistant prosecutor's reasons for using her first six peremptory challenges to excuse minority jurors as legitimate and therefore again rejected defendant's claim that the prosecutor had made discriminatory use of her peremptory challenges.
Defendant filed a motion to supplement the record and for reconsideration. The transcripts of jury selection were produced for the hearing on this motion, and defendant's trial counsel appeared. The focus of this hearing was on the reasons given by the assistant prosecutor at the original hearing for using two of her first six peremptory challenges to excuse the only two Hispanic members of the jury. Those reasons were:
Juror number five that was kicked off actually was juror number nine. Her name, Judge, was Mrs.I think it's Aquirre, Judge. I'm not sure how to pronounce it. It's A-Q-U-I-R-R-E. She was a Hispanic female from Newark. She was a secretary for a doctor's office. She had one child and she was two years old. Judge, but just if I could place the next one on the record because the reason for her exclusion isis coupled with the next woman who was excluded and that was juror number ten. Her name is Miss Martinez, and she was from East Orange. She was a Hispanic female and she was a program analyst in East Orange.
The reason Judge, that I have written down, and Your Honor, as you can see they were seated in juror, in seat number nine and seat number ten, next to each other. And my notes indicate, Judge, making faces with Mrs. Martinez, giggling high fiving when a juror in the back row was excused. So based on, Judge, they were sitting together and I was observing, I obviously wrote that they were making faces, giggling and and excited when another juror got kicked off, Judge.
Defendant's trial counsel informed the trial judge that he had no recollection of the alleged inappropriate conduct of the two Hispanic jurors described by the assistant prosecutor:
Judge, initially I wanted to supplement the record with what I recall from three years ago, and this has to do with the exclusion of Sylvia [Aquirre] and Esther Martinez as jurors. Now, I believe the prosecutor told The Court on August the 3rd, which is in the transcript, that she excluded those two people because they high-fived each other when one of the other jurors was excluded, and that they were making faces. Judge, that's not my recollection. I remember those two people very well. And, in fact, I was very keenly aware of those two people because prior to that two other Hispanic people were excluded, and after those two women were excluded there were no Hispanics on the jury. Clearly my client is an Hispanic and, you know, during the jury selection I was acutely aware of the fact that he was not going to have anybody that was Hispanic that was going to sit on his jury.
When these two people were knocked off I was dumbfounded. I couldn't believe that these two people were taken off because they had an opportunity to answer all the questions that the Court had presented to them and they did not indicate anything that would otherwise show that they couldn't be fair and impartial. And when I heard that allegedly they high-fived each other, Judge, that would have been something that would have stood out in my mind forever *1116 as far as trying cases. And I've tried a few but I've never sat in a case where I saw two jurors high-five each other during a jury selection where another juror got knocked off.
As far as making faces unfortunately I couldn't find the case, but I know there is case law about that being used as a reason by a prosecutor in another case and the court said that's not a sufficient basis for knocking somebody off a jury. That's just notnot a good excuse. But I don't recall that either. I justI just remember these two people in particular. I thought they were excellent jurors. And, frankly, I didn't think they really favored one side or the other. They were both, you know, if I remember correctly, you know, ... working mothers who had children who seemed very respectful, very attentive, and they just happened to sit next to each other, they were friendly with each other, but to me they didn't seem to do anything disrespectful that would lead anybody to want to exclude them as jurors. In fact, they probably would have been the perfect jurors for this case. But I raised the issue because to me there was only one reason why they were knocked off and that's because they were both Hispanics. Probably the fear was that if Hispanics sat on a case with Mr. Osorio that somehow they would be sympathetic and they would exclude him. And I and I indicated three years ago I hate making this motion, I don't want to make this motion, but those were the facts that were before me at the time.
Now I can't, you know, put the genie back in the bottle or, as they say, put Humpty-Dumpty back together. They should have been discussed three years ago when it occurred. Your recollection would have been better of what was occurring in that jury panel, my recollection would have been better, and we could have hashed it out right there. We could have even interviewed the jurors and asked them if they high-fived each other, or if other jurors had made those observations. But unfortunately it's three years later, recollections aren't as good. I even looked through my notes. I don't have any notes about high-fiving or anything like that.
The assistant prosecutor then reiterated that she had seen the two Hispanic, female jurors making faces, giggling and high-fiving each other when another juror was excused.
At the conclusion of the hearing on motion for reconsideration, the trial judge again concluded that defendant had failed to show that the State had used its peremptory challenges in a discriminatory manner.
Nothing appears in the record with regard to making faces, or giggling, or high-fiving, or anything of that sort. And I don't have any specific recollection of it, nor does [defense counsel]. Now, the fact that we don't have any specific recollection of it doesn't mean that it didn't happen. [The prosecutor] says it did and she provided notes apparently that are a part of the record that indicate the basis for her exercising her preemptory [sic] challenges and I made them as part of the record.
....
Based on what I heard from [the defense counsel at the original remand hearing] supplemented by my review of the transcripts provided by [defense counsel] and argument from [defense counsel] here today, I find that the defendant has not carried his burden of proving by a preponderance of the evidence that the prosecution exercised its preemptory [sic] challenges on constitutionally-impermissible grounds[.]
*1117 Although our prior decision authorized defendant to apply for reinstatement of his original appeal if the trial court rejected his claim that the prosecutor had made discriminatory use of peremptory challenges, defendant filed a new notice of appeal from the court's decision on remand.

I
Under both the United States and New Jersey Constitutions, the determination whether the prosecutor has exercised peremptory challenges in a discriminatory manner involves a three-step inquiry:
First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.... Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.
[Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 973-74, 163 L.Ed.2d 824, 831 (2006) (citations omitted).]
See also Gilmore, supra, 103 N.J. at 535-39, 511 A.2d 1150.
We concluded in our original opinion that the trial court "found that the prosecutor's use of her first six challenges to excuse minority jurors constituted `prima facie evidence' that the prosecutor had used those challenges in a discriminatory manner[,]" that "this finding [was] adequately supported by the record[,]" and "[t]herefore, the trial court should have called upon the prosecutor to provide `situation-specific' reasons for the exercise of her peremptory challenges." However, at the hearing on the remand, the trial judge seemed to retract his finding that defendant had made a prima facie showing that the assistant prosecutor made discriminatory use of her peremptory challenges. Moreover, the State's brief on this appeal questions the evidential foundation for this finding. Therefore, it is appropriate to return briefly to this issue.
After our original opinion, the Supreme Court of the United States made it easier for a party asserting a claim of the discriminatory use of peremptory challenges to establish a prima facie case. Under the prior test adopted by our Supreme Court, a defendant had to show that there was a "substantial likelihood" that the prosecutor had used peremptory challenges in a discriminatory manner to establish a prima facie case. Gilmore, supra, 103 N.J. at 536, 511 A.2d 1150. However, in Johnson v. California, 545 U.S. 162, 170, 125 S.Ct. 2410, 2417, 162 L.Ed.2d 129, 139 (2005), decided six days after our original opinion in this case, the Court rejected the argument that a defendant should be required to show that the prosecutor's use of peremptory challenges "was more likely than not the product of purposeful discrimination" to establish a prima facie case and held that a defendant is only required to "produc[e] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." In reaching this conclusion, the Court stated that "[t]he [Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)] framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process[,]" and that "[t]he inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking [the prosecutor] a simple question." 545 U.S. at 172, 125 S.Ct. at 2418, 162 L.Ed.2d at 140-41. The *1118 requirement that a defendant show a "substantial likelihood" of the discriminatory use of peremptory challenge to establish a prima facie case, which our Supreme Court adopted in Gilmore, is quite similar to the "more likely than not" standard for establishing a prima facie case, which the Supreme Court of the United States rejected in Johnson. In fact, the Court in Johnson appeared to equate the "strong or substantial likelihood" and the "more likely than not" tests for establishing a prima facie case. See id. at 165, 168, 125 S.Ct. at 2414, 2416, 162 L.Ed.2d at 136, 138. Therefore, we conclude that the part of Gilmore dealing with the proof required to establish a prima facie case has been superseded by Johnson.
Although the standard for establishing a prima facie case has been relaxed by Johnson, the kind of factors that may support this findingand thereby shift the burden to the prosecutor to present non-discriminatory reasons for the exercise of peremptory challengesare similar. In State v. Watkins, 114 N.J. 259, 266, 553 A.2d 1344 (1989), our Supreme Court indicated that those factors include:
(1) that the prosecutor struck most or all of the members of the identified group from the venire; (2) that the prosecutor used a disproportionate number of his or her peremptories against the group; (3) that the prosecutor failed to ask or propose questions to the challenged jurors; (4) that other than their race, the challenged jurors are as heterogeneous as the community as a whole; and (5) that the challenged jurors, unlike the victims, are the same race as defendant.
Applying these factors under the Johnson test, it is even clearer now than at the time of our original opinion that defendant established a prima facie case of the discriminatory use of peremptory challenges. "[T]he prosecutor [had] struck ... all of [the minority jurors]" when defense counsel objected. Ibid. Moreover, "the prosecutor [had] used a disproportionate number of ... her peremptories" against minority jurors. Ibid. In fact, all six of the prosecutor's peremptory challenges up to the time defense counsel objected were used to excuse minority jurors. Furthermore, the prosecutor "failed to ... propose questions to the challenged jurors" before using her peremptories. Ibid. And two of the six challenged jurors were members of "the same [ethnic group (Hispanic)] as defendant." Ibid. Therefore, we reaffirm the conclusion reached in our original opinion that defendant established a prima facie case of discriminatory use of peremptory challenges.

II
Because defendant established a prima facie case, the burden shifted to the prosecutor "to come forward with evidence that the peremptory challenges under review are justifiable on the basis of concerns about situation-specific bias." Gilmore, supra, 103 N.J. at 537, 511 A.2d 1150. To satisfy this burden, the prosecutor was required to "articulate `clear and reasonably specific' explanations of [her] `legitimate reasons' for exercising each of [her] peremptory challenges." Ibid. (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207, 218 (1981)). Those reasons were required to be "reasonably relevant to the particular case on trial or its parties or witnesses[.]" Id. at 538, 511 A.2d 1150 (quoting People v. Wheeler, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, 765 (1978)). Such reasons are required to be both "genuine and reasonable." State v. McDougald, 120 N.J. 523, 555, 577 A.2d 419 (1990).
*1119 At the hearing on remand, the assistant prosecutor gave the following reasons for using her first six peremptory challenges to excuse minority jurors and, after defendant asserted that she was using her peremptory challenges in a discriminatory manner, for also using her seventh peremptory challenge to excuse a minority juror:
1. Hazel Purcel, an African-American female from East Orange with a relative involved in law enforcement, was excused because her father had been murdered and the responsible party "got-off."
2. Floyd Fair, an African-American male from East Orange, was excused because he was "sleeping" during jury selection.
3. Gloria Smith, an African-American female who resided in Newark and was friends with an East Orange police officer, was challenged because her brother had been convicted of a crime and served time in a State penal institution.
4. William Slade, an African-American male who had close friends and relatives in law enforcement (North Carolina, Irvington, Newark and East Orange), was challenged because his brother was arrested and placed on probation for a narcotics offense.
5 & 6. Sylvia Aquirre of Newark and Esther Martinez of East Orange, both Hispanic women and seated next to each other, were challenged for giggling, making faces at each other and high-fiving when another potential juror was excused.
7. Bernard Davis, an African-American male, was challenged for allegedly "sleeping for the majority of the selection."
We have no doubt that a conviction of a prospective juror's brother for a criminal offense, which was the reason given for the excusal of jurors Smith and Slade, constitutes a reasonable ground for exercise of a peremptory challenge in a criminal case. We also have no doubt that sleeping during jury selection, which was the reason given for excusing jurors Fair and Davis, constitutes a reasonable ground for exercise of a peremptory challenge. Moreover, if the conduct of jurors Aquirre and Martinez described by the assistant prosecutor actually occurred, that too could constitute a reasonable ground for exercise of a peremptory challenge. However, we question whether the reason given for excusing juror Purcelthat her father had been murdered and she believed his killer "got off"constituted a reasonable ground for the exercise by the State of a peremptory challenge. The assistant prosecutor did not explain why she believed this juror was likely to be biased against the State, and it is not self-evident to us. Nevertheless, we assume that the assistant prosecutor's proffered reason for excusal of juror Purcel was sufficient and proceed to the third step of the inquiry required where a claim is made that peremptory challenges have been exercised in a discriminatory manner.

III
At this stage, a trial court "must judge the defendant's prima facie case against the prosecution's rebuttal to determine whether the defendant has carried the ultimate burden of proving, by a preponderance of the evidence, that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds of presumed group bias." Gilmore, supra, 103 N.J. at 539, 511 A.2d 1150.
An appellate court ordinarily will extend substantial deference to a trial court's determination of whether the defendant has shown that the prosecutor had *1120 a discriminatory intent in the exercise of a peremptory challenge. See Snyder v. Louisiana, ___ U.S. ___, ___, 128 S.Ct. 1203, 1207-08, 170 L.Ed.2d 175, 181 (2008); Gilmore, supra, 103 N.J. at 541 n. 12, 545, 511 A.2d 1150; State v. Clark, 324 N.J.Super. 558, 571, 737 A.2d 172 (App.Div.1999), certif. denied, 163 N.J. 10, 746 A.2d 456 (2000). The primary reason for this deference is that only the trial judge is in a position to make "first-hand observations" of the demeanor of both the attorney who exercises the peremptory challenge and the juror who is excused. See Snyder, supra, ___ U.S. at ___, 128 S.Ct. at 1208, 170 L.Ed.2d at 181.
However, if a trial judge erroneously rules that a defendant has failed to establish a prima facie case of the discriminatory use of peremptory challenges and for that reason fails to call upon the prosecutor at the time of trial to give reasons for the exercise of those challenges, the trial judge's capacity to make such evaluations of demeanor is diminished and in some instances may be lost. This is particularly true where a substantial period of time elapses between the trial and the judge's determination of whether a prosecutor has exercised peremptory challenges in a discriminatory manner (in this case, more than three years), and the purported ground for the exercise of some of the prosecutor's peremptory challenges is not disclosed by the trial record.
If the trial judge had called upon the assistant prosecutor to give reasons for the use of her first six peremptory challenges to excuse minority jurors at trial, and she had alleged that jurors Aquirre and Martinez had been giggling, making faces at each other and high-fiving when another potential juror was excused, the judge could have made a reliable determination of whether such conduct had actually occurred based not only on defense counsel's observations but also on his own observations and those of other persons in the courtroom during jury selection. However, because the prosecutor was not called upon to state her reasons for exercising those peremptories until three years later, the only evidence placed before the judge regarding this alleged conduct by jurors Aquirre and Martinez was the assistant prosecutor's assertion that it had occurred and defense counsel's expression of incredulity that such conduct could have occurred without him observing it. Furthermore, confronted with this unsatisfactory record, the trial judge did not make an express finding that the conduct of jurors Aquirre and Martinez described by the assistant prosecutor had actually occurred. All the judge said was that the fact that neither he nor defense counsel had a "specific recollection" of such conduct "doesn't mean that it didn't happen."
In addition to his failure to make an express finding regarding the alleged incident involving jurors Aquirre and Martinez, the trial judge's decision on the remand was deficient in a number of other respects. In determining whether a prosecutor has exercised peremptory challenges in a discriminatory manner, a trial court should consider: (1) "whether the prosecution has applied the proffered reasons for the exercise of the disputed challenges even-handedly to all prospective jurors[,]" (2) "the overall pattern of the prosecution's use of its peremptory challenges[;]" and (3) "the composition of the jury ultimately selected to try the case." State v. Clark, 316 N.J.Super. 462, 474, 720 A.2d 632 (App.Div.1998) (citing Gilmore, supra, 103 N.J. at 541-43, 511 A.2d 1150). The trial judge failed to make any findings regarding these critical considerations.
We have previously expressed our reservations as to whether the reason given *1121 by the assistant prosecutor for excusing juror Purcelthat her father had been murdered and she believed his killer "got-off"constituted a reasonable ground for the State's exercise of a peremptory challenge. However, assuming that the fact that a juror or relative of a juror has been a victim of a crime may be a proper ground for the exercise of a peremptory challenge in some circumstances, the trial judge must consider whether this proffered reason has been applied even-handedly to all prospective jurors in determining whether the prosecutor has exercised a peremptory challenge in a discriminatory manner. The Supreme Court of the United States has reemphasized the importance of such "even-handedness" in the exercise of peremptory challenges in its recent decisions in Miller-El v. Dretke, 545 U.S. 231, 240-52, 125 S.Ct. 2317, 2325-32, 162 L.Ed.2d 196, 214-22 (2005) and Snyder, supra, ___ U.S. at ___, 128 S.Ct. at 1208-12, 170 L.Ed.2d at 181-86.
The trial judge failed to consider whether the assistant prosecutor extended even-handed consideration to the circumstance that a relative had been a crime-victim the purported reason for excusing Purcelto non-minority jurors. A total of twenty-one prospective jurors stated that either they, a relative or a friend had been a crime-victim and four of these jurors were selected for the jury that tried defendant. Although Purcel was the only prospective juror who stated that the perpetrator "got off," numerous prospective jurors stated that the perpetrator was "not apprehended." We have difficulty understanding how a prosecutor could come to the conclusion that a prospective juror who felt that the perpetrator of a crime against a family member "got off" would be biased against the State, but that prospective jurors who had been informed the perpetrator had not been apprehended would not have such bias. See Clark, supra, 324 N.J.Super. at 573-74, 737 A.2d 172. At a minimum, it was incumbent upon the trial judge to ask the assistant prosecutor to compare these circumstances and then to make findings regarding the even-handed application of her purported reason for Purcel's excusal, which the judge failed to do.
It was also incumbent upon the trial judge to consider the overall pattern of the assistant prosecutor's exercise of her peremptory challenges. Clark, supra, 316 N.J.Super. at 474, 720 A.2d 632. The record discloses that the prosecutor used the first seven of her ten peremptory challenges to excuse minority jurors. We indicated in Clark that "[e]ven if the reasons for each individual challenge appear sufficient when considered in isolation from the prosecution's other challenges, the use of a disproportionate number of peremptory challenges to remove members of a cognizable group may warrant a finding that those reasons are not genuine and reasonable." Ibid. In this case, even when considered in isolation, the assistant prosecutor's challenges of prospective jurors Purcel, Aquirre and Martinez were highly questionable. But considered in the context of the assistant prosecutor's use of a disproportionate number of peremptory challenges to excuse minority jurors, the inference that there was a discriminatory motive for the exercise of those challenges is even stronger.
Finally, the trial judge failed to consider the composition of the jury that was ultimately selected to try defendant. We have previously recognized that even though the presence of members of a cognizable group who allegedly have been discriminatorily excluded from a jury does not necessarily negate a finding that an individual prospective juror was discriminatorily challenged, "the ultimate composition of the jury[] is relevant to the determination *1122 of whether the prosecutor's intent was discriminatory." Clark, supra, 324 N.J.Super. at 570, 737 A.2d 172. Consequently, the presence on the jury of a substantial number of the group alleged to have been discriminatorily excluded may support a finding that a questionable proffered reason for challenging a member of that group was not reflective of a discriminatory intent. Id. at 575, 737 A.2d 172. However, the trial judge made no finding regarding the composition of the jury that found defendant guilty, nor is there any basis in the record for us to make this finding.
The deficiencies in the evidentiary record and the trial judge's findings on remand could support a second remand. However, more than six years have elapsed since defendant's trial, and there is no reason to believe that additional evidence material to the issue of the assistant prosecutor's exercise of her peremptory challenges could be presented on a further remand. Moreover, based on the assistant prosecutor's overall pattern of the use of her peremptory challenges, her questionable challenges of prospective jurors Aquirre, Martinez and Purcel, and her failure to apply the purported reason for the excusal of juror Purcel even-handedly, we conclude that defendant made a sufficient showing that the State used its peremptory challenges in a discriminatory manner.
Accordingly, defendant's convictions are reversed, and the case is remanded to the trial court for a new trial.