**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5068-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JALIYL AMAKER, a/k/a
JAMALL BROWN, JALIL
BROWN, JAYLIL AMAKER,
JALIYL S. AMAKER, JALIVI S.
AMAKER, JAVLIL AMAKER,
JAYLIL TAYLOR, and JOLLI,

    Defendant-Appellant.

_____

Submitted November 4, 2020 – Decided December 14, 2020

Before Judges Yannotti, Mawla, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-04-0256.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

Following a jury trial, defendant was convicted of second-degree unlawful possession of a weapon and other offenses. Defendant appeals from his judgment of conviction dated May 21, 2018. For the following reasons, we affirm defendant's convictions and sentence.

I.

In January 2017, a 9-1-1 caller reported that there was a man flashing a gun on a street in Jersey City and threatening to shoot people. The responding officers observed a group of men at the identified location but only the defendant matched the description provided by the 9-1-1 caller. As the defendant approached the officers, one of the responding officers saw a handgun protruding from his waistband.

Defendant then grabbed the handgun from his waistband, turned, and ran from the responding officers followed by Reonte Oliver. One officer testified that Oliver yelled out "throw the gun, throw the gun" to defendant. Defendant threw the gun from his waistband and discarded it as he crossed the street. The handgun was later described by one of the officers as "gigantic," and had a

2

magazine loaded with eight .45 caliber bullets with an additional bullet in the chamber.

Defendant was ultimately tackled and during a search incident to arrest, the police seized a handgun magazine loaded with eight bullets in defendant's jacket. The officers also arrested Oliver.

Defendant was later charged with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count one); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count two); fourth-degree obstruction of the administration of law, N.J.S.A. 2C:29-1(a) (count three); fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2) (count four); fourth-degree possession of a large capacity magazine, N.J.S.A. 2C:39-3(j) (count five); third-degree hindering his own apprehension, N.J.S.A. 2C:29-3(b)(1) (count six); and second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b)(1) (count eight). Oliver was charged with third-degree hindering the apprehension of another, N.J.S.A. 2C:29-3(a)(4).

The morning of jury selection, defendant moved to sever his case from Oliver's. Defendant argued that trying the cases together would be unfairly prejudicial because the State intended to introduce Oliver's statement directing defendant to "throw the gun" which was averse to his interests. When asked by

the court why defendant's counsel waited so long to make the motion, counsel stated she thought "there [wa]s no co-defendant in this case." The State opposed the motion as untimely and noted that defendant's counsel was fully aware of Oliver's status as a co-defendant, having received previous orders of the court which identified Oliver as such.

The court noted that the motion practice in the case included Oliver's application to dismiss the indictment and the State's motion to admit the 911 call, which were "filed, heard, [and] ruled upon" and as such, defendant's counsel would have received notifications of the court's rulings which confirmed Oliver's status as a co-defendant. The court accordingly denied defendant's motion and characterized it as "terribly out of time" as all motions were to be filed no later than June 5, 2017, approximately nine months prior to the date on which defendant filed his severance application. The court also found that defendant had "ample opportunity" to make a timely application and that there was no newly discovered evidence unavailable to defendant prior to making the motion.

During jury selection, the prosecutor used his peremptory challenges to excuse four African-American jurors. The first excused juror stated he had previously testified in court when "somebody claimed to be [him], got a ticket,

4 <span>A-5068-17T1</span>

didn't pay it, [and the court] sent out a bench warrant." He explained that he offered proof about the mistaken identity issue, but the officer refused to state whether he recognized him. When the prosecutor sought clarification as to how this affected his views of the justice system and police, the juror stated, "I just didn't appreciate the way he didn't acknowledge that I wasn't the person."

A second excused juror stated she was a probation officer, had a degree in social work, and had a cousin incarcerated for attempted murder. A third juror explained how he had previously served as a juror in a civil case in the Bronx. Finally, the fourth juror, when explaining his views on gun control, stated "I don't think guns are the problem, guns have never been the problem, it's stupid people with guns."

The court, sua sponte, addressed the State's challenges with the prosecutor who offered non-race-based reasons for dismissing each juror. Regarding the juror who was issued an erroneous bench warrant, the prosecutor explained he was "afraid that [the juror] would not believe the officer's testimony" which was significant as the evidence was "completely officer-based." With respect to the juror who was employed as a probation officer, the prosecutor noted that because a family member was incarcerated and she served as a probation officer, he "didn't want somebody who was dealing with criminals on a daily basis" serving

as a juror. As to the juror who had previously served on a jury in the Bronx, the prosecutor explained that he "attempted to make eye contact with him more than once" and the juror "looked back towards the defense a number of times." Finally, the prosecutor stated the fourth juror was excused because "[t]he stupid people with guns comment bothered" him and he was concerned regarding potential jury nullification.

The court denied defendant's motion for a mistrial and explained that it "recall[ed] the comment about stupid people carrying guns" and that the juror who experienced mistaken identity seemed "a bit annoyed." The court also found the probation officer "ha[d] much contact with criminal defendants" and "could lead one to believe that she may be a little bit softer or more lenient" on defendant. The court concluded that the prosecutor's decision to strike the four African-American jurors was "simply coincidental" and "not an effort to purge the jury of African-Americans."

At trial, defendant stipulated that he did not have a permit to carry a firearm. A detective for the State Police Ballistics Unit testified that the gun was operable, the magazine held .45 caliber ammunition which fit into defendant's gun, was capable of being fired with the magazine, and the serial number had been grinded off. On the State's application, the court dismissed

A-5068-17T1

count five because the ballistics expert concluded the gun only carried fourteen bullets, not fifteen as required by N.J.S.A. 2C:39-3(j).

After the State rested, Oliver moved for a judgment of acquittal, which the court granted. The court determined that Oliver's statement was not admissible against defendant because "the prejudice far outweigh[ed] any relevance." The court then instructed the jury as follows:

> I've struck those statements from the record. They are not evidence. When you return to deliberate at the end of this case, you cannot consider those statements as evidence.
>
> Now I don't expect that you can erase that from your mind. I know the mind is not a tape recorder. In instructing you on that, what I'm telling you is, you have to remember those statements and remember that you cannot use [them]. They can't come up during the deliberations, they can play no role.
>
> They had only been admitted as they related to Mr. Oliver. As you know, he's not here, so the statements play no role in this case and the case against Mr. Amaker.

During the jury charge, the court again instructed the jury that Oliver's statement was not evidence and could not "be considered by you in your deliberations in this matter." The jury found defendant guilty of counts one, two, three, four, and six. Defendant subsequently pled guilty to count eight, which was bifurcated from the trial.

A-5068-17T1

At sentencing, the State made an application for an extended term pursuant to N.J.S.A. 2C:43-6(c), and defendant conceded his prior conviction for aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4), subjected him to a mandatory extended term which converted his sentencing exposure for his second-degree charge from five to ten years to the range for a first-degree crime, or ten to twenty years. See N.J.S.A. 2C:43-6(a). The court reviewed defendant's prior arrests and convictions and noted "a history that is replete with violent behavior."

After concluding that the aggravating factors substantially outweighed the nonexistent mitigating factors, the court imposed the following prison term for each count: 1) sixteen years subject to eight years of parole ineligibility, pursuant to N.J.S.A. 2C:43-6(c) for count one; 2) separate eighteen-month sentences for counts two, three, and four; 3) five years for count six; and 4) ten years subject to five years of parole ineligibility for count eight. The court found the sixteen-year sentence imposed on count one "sufficient" and ordered the remaining sentences to run concurrent to the sentence imposed on count one.

On appeal, defendant raises the following contentions:

> I. THE TRIAL COURT ERRED WHEN IT HELD THAT DEFENDANT'S SEVERANCE MOTION WAS UNTIMELY AND REFUSED TO CONSIDER THE MERITS OF THAT MOTION.

A. [THE TRIAL COURT ERRED WHEN IT REFUSED TO CONSIDER DEFENDANT'S SEVERANCE MOTION AND INSTEAD FOUND THAT IT WAS MADE OUT OF TIME.]

B. [THE SEVERANCE MOTION SHOULD HAVE BEEN GRANTED.]

C. [THE TRIAL COURT'S ERRORS IN FAILING TO SEVER THE CASES WAS COMPOUNDED WHEN JUDGMENT OF ACQUITTAL WAS GRANTED FOR THE CO-DEFENDANT AFTER HIS PREJUDICIAL AND INADMISSIBLE STATEMENT HAD ALREADY BEEN ADMITTED AT TRIAL.]

D. [THE TRIAL COURT'S CURATIVE INSTRUCTION WAS INSUFFICIENT TO CURE THE TAINT CAUSED BY THE FORMER CO-DEFENDANT'S PREJUDICIAL STATEMENT.]

II. THE TRIAL COURT ERRONEOUSLY RULED THAT THE STATE'S USE OF PEREMPTORY CHALLENGES TO EXCUSE FOUR AFRICAN-AMERICAN JURORS WAS BASED UPON LEGITIMATE NON-DISCRIMINATORY REASONS.

9

III.   DEFENDANT'S SENTENCE IS MANIFESTLY
       EXCESSIVE AND MUST BE REDUCED.


II.

In his first point, defendant challenges the court's severance decision on both procedural and substantive grounds. Procedurally, he contends the court abused its discretion in denying the motion as untimely as good cause existed for the court to consider the merits of his application. Substantively, he maintains that the severance application should have been granted as he was prejudiced by the jury considering then co-defendant Oliver's statement to "throw the gun, throw the gun," notwithstanding the court's limiting instructions. We disagree with both of these arguments.

The applicable law of severance is clear. "Two or more defendants may be tried jointly 'if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.'" State v. Brown, 170 N.J. 138, 159-60 (2001) (quoting R. 3:7-7). Courts generally prefer to try co-defendants jointly, "particularly when 'much of the same evidence is needed to prosecute each defendant.'" Id. at 160 (quoting State v. Brown, 118 N.J. 595, 605 (1990)). "That preference is guided by a need for judicial efficiency, to accommodate witnesses and victims, to avoid

inconsistent verdicts, and to facilitate a more accurate assessment of relative culpability." Ibid.

A single joint trial, however, may not take place at the expense of a defendant's right to a fair trial. State v. Sanchez, 143 N.J. 273, 290 (1996). When considering a motion for severance, a trial court should "balance the potential prejudice to defendant's due process rights against the State's interest in judicial efficiency." Brown, 118 N.J. at 605 (quoting State v. Coleman, 46 N.J. 16, 24 (1965)).

Courts apply a rigorous test for granting severance. Brown, 170 N.J. at 160. A mere claim of prejudice is insufficient to support a motion to sever. State v. Moore, 113 N.J. 239, 274 (1988). A defendant also does not have the right to severance simply because he or she believes that a separate trial "would offer defendant a better chance of acquittal." State v. Johnson, 274 N.J. Super. 137, 151 (App. Div. 1994) (quoting State v. Morales, 138 N.J. Super. 225, 231 (App. Div. 1975)).

"A motion for separate trial of counts of an indictment or accusation must be made pursuant to [Rule] 3:10-2, unless the court, for good cause shown, enlarges the time." R. 3:15-2(c). Typically, post-indictment motions must be made by the initial case disposition conference and a pre-trial motion should be

determined before the trial memorandum is prepared and the trial date is fixed "unless the court, for good cause, orders it deferred for determination at or after trial." R. 3:10-2(b).

Our scope of review on this issue is limited. The decision to sever rests within the trial court's discretion. State v. Weaver, 219 N.J. 131, 149 (2014). An appellate court will defer to the trial court's decision on a severance motion unless it constitutes an abuse of discretion. Ibid.

In this matter, the court did not abuse its discretion in refusing to consider the defendant's severance application. The motion was made the morning of jury selection, well after the deadline imposed by the Rules. Further, while defendant offered lack of notice about the joint trial as a reason for the delay, the court's conclusion that defendant's explanation did not establish good cause under Rule 3:10-2 was amply supported by the record as defendant would have been aware of his status as a co-defendant with Oliver based on the motion practice in the case, at a minimum.

Citing State v. McLaughlin, 205 N.J. 185, 206-08 (2011) and Bruton v. United States, 391 U.S. 123 (1968), defendant also contends that by failing to consider the severance motion, defendant's constitutional right to confront Oliver about his statement was violated. Defendant argues allowing the

statement was prejudicial because it created the inference that "defendant was, in fact, in possession of a gun."  Defendant also contends:  1) the statement's prejudice to defendant was "compounded" when a judgment of acquittal was granted for Oliver, 2) the statement was inadmissible hearsay, and 3) the court's curative instruction to the jury was "meaningless," citing State v. Vallejo, 198 N.J. 122, 134 (2009), because the instruction was not "firm" or "clear."

We conclude these arguments are substantively meritless as they ignore the practical effect of the court's dismissal of the charge against Oliver, its subsequent multiple limiting instructions, and the overwhelming evidence of defendant's guilt independent of Oliver's statement.

First, as noted, when the court granted Oliver's motion for a judgment of acquittal, it effectively severed it from defendant's trial prior to the jury's deliberations.  Second, the court provided two strongly worded limiting instructions that directed the jury to give no consideration to Oliver's statement. We assume and have no reason to doubt based on the record, that the jury heeded the court's instructions.  See State v. Burns, 192 N.J. 312, 335 (2007) ("One of the foundations of our jury system is that the jury is presumed to follow the trial court's instructions." (citing State v. Nelson, 155 N.J. 487, 526 (1998))).

Additionally, the evidence of defendant's guilt was overwhelming. See State v. Sterling, 215 N.J. 65, 104 (2013) (affirming defendant's conviction despite improper joinder because of "the strong, independent proof of defendant's guilt"). Indeed, one of the responding officers who arrested defendant testified that he clearly saw a gun protruding from defendant's waistband, that defendant "grabbed at the handgun" before running from him, that he subsequently "discarded [the gun] on the street," and he heard the gun "ma[k]e a loud clanking noise when it hit the ground." The officer also identified the gun and the loaded magazine that defendant discarded, and a gun magazine and bullets found on defendant when he was arrested. A second responding officer similarly testified to observing defendant in possession of the gun.

Finally, the 9-1-1 call which the jury considered described an individual resembling defendant as in possession of a gun. The responding officers identified defendant as the only person who matched the description provided by the 911 caller. Thus, even if the court's joinder decision was incorrect, the overwhelming evidence against defendant supports the conclusion that any error was harmless. See R. 2:10-2; see also State v. Prall, 231 N.J. 567, 588 (2018) ("[W]hen evaluated in light of the vast evidence against defendant, . . . errors

14

[by the trial court] were not 'sufficient to raise a reasonable doubt as to whether [they] led the jury to a result it otherwise might not have reached.'" (alteration in original) (quoting State v. Daniels, 182 N.J. 80, 95 (2004))).

III.

In his second point, defendant challenges the prosecutor's exercise of peremptory challenges. Defendant, an African-American, specifically claims the prosecutor improperly used preemptory challenges to exclude prospective African-American jurors from the jury panel, in violation of defendant's constitutional right under Batson v. Kentucky, 476 U.S. 79 (1986), and State v. Gilmore, 103 N.J. 508 (1986), as explained in State v. Osorio, 199 N.J. 486 (2009). We disagree.

"[T]he determination of whether the prosecution has exercised peremptory challenges in a discriminatory manner involves a three-step procedure." State v. Clark, 316 N.J. Super. 462, 468 (App. Div. 1998). It begins with a "rebuttable presumption that the prosecution has exercised its peremptory challenges on" permissible grounds. State v. Thompson, 224 N.J. 324, 340 (2016) (quoting Gilmore, 103 N.J. at 535). To rebut this presumption, the defense must show "that the prosecution exercised its peremptory challenges on constitutionally-impermissible grounds." Id. at 341 (quoting Gilmore, 103 N.J. at 539).

15

As the party objecting to a peremptory challenge, defendant bears the burden to prove purposeful discrimination based on the "totality of the relevant facts." Batson, 476 U.S. at 94. "The opponent of the strike bears the burden of persuasion regarding racial motivation . . . ." Thompson, 224 N.J. at 334 (quoting Davis v. Ayala, 576 U.S. 257, 271 (2015)). "That burden is slight, as the challenger need only tender sufficient proofs to raise an inference of discrimination." Osorio, 199 N.J. at 492.

After the defense has made this showing, the burden shifts to the State to "articulat[e] 'clear and reasonably specific' explanations of its 'legitimate reasons' for exercising each of the peremptory challenges." Thompson, 224 N.J. at 341 (quoting Gilmore, 103 N.J. at 537). The party exercising the peremptory challenge must provide evidence "that the peremptory challenge[] under review [is] justifiable on the basis of concerns about situation-specific bias." Gilmore, 103 N.J. at 537.

The trial court must determine whether counsel provided a "reasoned, neutral basis for the challenge or if the explanations tendered are pretext." Osorio, 199 N.J. at 492. The party "must satisfy the court that [it] exercised such peremptories on grounds that are reasonably relevant to the particular case

on trial or its parties or witnesses." Gilmore, 103 N.J. at 538 (alteration in original) (quoting People v. Wheeler, 583 P.2d 748, 760-61 (Cal. 1978)).

In the third step, if the court is satisfied that the State has advanced legitimate nondiscriminatory grounds in response to the objection, it must then determine "whether, by a preponderance of the evidence, the party contesting the exercise of a peremptory challenge has proven that the contested peremptory challenge was exercised on . . . impermissible grounds of presumed group bias." Osorio, 199 N.J. at 492-93. The court must consider whether the party exercising the peremptory challenge:

> has applied the proffered reasons for the exercise of the disputed challenges even-handedly to all prospective jurors. A nondiscriminatory reason for exercising a peremptory challenge which appears genuine and reasonable on its face may become suspect if the only prospective jurors with that characteristic who the [party exercising the peremptory challenge] has excused are members of a cognizable group.

> In addition, the court must consider the overall pattern of the [party exercising the peremptory challenge]'s use of its peremptory challenges. Even if the reasons for each individual challenge appear sufficient when considered in isolation from the . . . other challenges, the use of a disproportionate number of peremptory challenges to remove members of a cognizable group may warrant a finding that those reasons are not genuine and reasonable.

A-5068-17T1

Finally, the court must consider the composition of the jury ultimately selected to try the case. Although the presence on the jury of some members of the group alleged to have been improperly excluded does not relieve the trial court of the responsibility to ascertain if any prospective juror was peremptorily challenged on a discriminatory basis, this circumstance may be highly probative of the ultimate question whether the . . . proffered nondiscriminatory reasons for exercising peremptory challenges are genuine and reasonable.

[Id. at 506 (alterations in original) (quoting Clark, 316 N.J. Super. at 473-74).]

We will uphold the trial court's ruling on whether the prosecution has exercised its peremptory challenges on constitutionally impermissible grounds unless it is clearly erroneous. Thompson, 224 N.J. at 344. The standard of review "necessarily applies to the trial court's assessment of the prosecutor's candor and sincerity in the presentation of reasons for exercising peremptory challenges." Id. at 345 (citing State v. Williams, 113 N.J. 393, 411 (1988)).

We are satisfied from a review of the record that the court's decision was not clearly erroneous. Even assuming that defendant made a prima facie showing under the first step of the Osorio analysis based on the court's sua sponte raising of the issue, the prosecutor provided a reasoned, neutral basis for excluding each African-American juror that was supported by the record thereby satisfying step two of the Osorio test. Those reasons included: 1) one juror's

18

potential to not believe the police officer's testimony, 2) a second juror who worked as a probation officer and the prosecutor's concerns regarding purported bias, 3) a third juror's failure to make eye contact with the prosecutor, and 4) the fourth juror's comment about "stupid people with guns." After considering the prosecutor's explanations, the court explicitly found that "the State ha[d] provided sufficient information to establish that the striking of these jurors [wa]s simply coincidental."[1]

As to step three, the court considered the arguments of both the State and defendant's counsel and found no constitutional violation. The court further explained:

> I do find that the State has provided . . . sufficient
> information to establish that the striking of these jurors

---

[1] While the court did not make a specific finding as to the juror who the prosecutor contended failed to make eye contact, defendant points to no authority to suggest he is entitled to a reversal of his conviction because of this failure. We have previously acknowledged that "[i]t is not unimportant for an attorney to establish eye contact with a potential juror." State v. Clark, 324 N.J. Super. 558, 571-72 (App. Div. 1999) (upholding the strike of a potential juror who "refused to look at" the prosecutor). Further, the reasons offered by the prosecutor were strong and undisputed. In this regard, defense counsel did not dispute that the excused juror refused to make eye contact with the prosecutor while repeatedly looking at defense counsel. Cf. Osorio, 199 N.J. at 496-97 (trial counsel contested whether potential jurors high-fived each other). Finally, the trial court's statements detailed supra, and its resumption of jury selection, established that the court credited the prosecutor's non-discriminatory reasons and rejected any claim of discrimination.

is simply coincidental, it was not a pattern, not an effort to purge this jury of African-Americans.

. . . .

There has been a large number of African-Americans excused by the court for cause. I would say that when the panel came up it was a true reflection of the community in terms of various sexes, races, ethnic backgrounds . . . . It[ is just that] to this point . . . we have had numerous African-Americans that were excused for cause without objection.

So the fact that it is now a limited number is not as a result of the actions of the State it has been for reasons that we [have] had jurors come to sidebar, victims of crimes, opinions on guns, and things of that nature.[2]

In sum, there was ample evidence that the prosecutor had offered a credible, "reasoned, neutral basis for [each] challenge," and that defendant had failed to "prove[] that the contested peremptory challenge was exercised on unconstitutionally impermissible grounds of presumed group bias." Osorio, 199 N.J. at 492-93. That evidence rebutted the apparent satisfaction of defendant's prima facie claim, and defendant offered the trial court no evidence, argument, or complaint to the contrary. "[I]f . . . the trial court believes the prosecutor's nonracial justification, and that finding is not clearly erroneous, that is the end

---

[2] We note that defendant did not renew his motion for a mistrial at the conclusion of jury selection.

A-5068-17T1

of the matter." Thompson, 224 N.J. at 340 (alteration in original)(citation omitted).

IV.

In defendant's final argument, he contends that the sentencing court erred by finding aggravating factors three and six, failing to "find specific deterrence as it relates to aggravating factor nine," refusing to "apply mitigating factors two and eleven," and imposing "an excessive sentence in light of the aggravating factors." We disagree with all of these arguments.

Sentencing determinations are reviewed on appeal with a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Once the trial court has balanced the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and -1(b), it "may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010);

A-5068-17T1

see also State v. Case, 220 N.J. 49, 65 (2014) (instructing that appellate courts may not substitute their judgment for that of the sentencing court, provided that the "aggravating and mitigating factors are identified [and] supported by competent, credible evidence in the record").

Here, the court found aggravating factors three, "[t]he risk that . . . defendant will commit another offense," N.J.S.A. 2C:44–1(a)(3); six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted," N.J.S.A. 2C:44–1(a)(6); and nine, "[t]he need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9). We are satisfied from our review of the record that the court based its findings on these aggravating factors on the seriousness of the offenses, defendant's criminal history, and the need for deterrence. These findings were all supported by competent and credible evidence in the record.

Further, any possible mitigating factor was clearly outweighed by the well-supported aggravating factors. As the court observed, defendant has an extensive juvenile and adult criminal history, that was "replete with violent behavior." This criminal history supports a finding that there was a need for specific deterrence. See State v. Thomas, 188 N.J. 137, 153-54 (2006).

The fact that defendant attempted to evade the responding officers while in possession of a defaced and loaded gun supports the court's decision not to apply mitigating factor two. See N.J.S.A. 2C:44-1(b)(2) ("The defendant did not contemplate that his conduct would cause or threaten serious harm."). Nor does the record contain evidence of excessive hardship establishing the applicability of mitigating factor eleven. See N.J.S.A. 2C:44-1(b)(11) ("The imprisonment of the defendant would entail excessive hardship to himself or his dependents."); State v. Dalziel, 182 N.J. 494, 505 (2005).

In sum, the sentence is well within the permissible range, is supported by credible evidence in the record, and does not shock the judicial conscience. Accordingly, we discern no abuse of discretion. State v. Fuentes, 217 N.J. at 70.

To the extent we have not addressed any of the defendant's arguments, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5068-17T1